**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

**Case No.:**

MAYLEE BARDELAS,

     Plaintiff,

v.

CITY OF DORAL,
a Florida Incorporated Municipality,

     Defendant.

_____/

## COMPLAINT

Plaintiff, MAYLEE BARDELAS ("Plaintiff"), by and though her undersigned counsel, hereby sues Defendant, CITY OF DORAL ("Defendant" or "City of Doral"), and alleges as follows:

### NATURE OF ACTION

1. This action arises out of Plaintiff's employment relationship with Defendant, and is brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000 *et seq*. ("Title VII") and the Florida Civil Rights Act of 1992, as amended, Chapter §760, Fla. Stat. ("FCRA") and the Civil Rights Act of 1871, as amended, 42 U.S.C. §1983 ("Section 1983"), and 42 U.S.C. §1988, to redress sex discrimination, hostile work environment sexual harassment, gender discrimination, hostile work environment gender discrimination, retaliation, tangible job detriment, and violations of state law and the First and Fourteenth Amendments of the United States Constitution.

### JURISDICTION AND VENUE

2. This is an action brought for damages in excess of $75,000.00, exclusive of interest, attorneys' fees, and costs.

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1137, 1343, and 1345.

4. Defendant's unlawful conduct was committed within the jurisdiction of the Miami Division of the United States District Court for the Southern District of Florida.

5. Venue of this action is properly placed in the Southern District of Florida, Miami Division, pursuant to 28 U.S.C. §1391(b), since the employment practices hereafter alleged to be unlawful were committed in Miami-Dade County, Florida.

## PARTIES

6. At all times material hereto, Plaintiff was and is employed by Defendant, City of Doral, as a law enforcement officer, a resident of Miami-Dade County, and is otherwise *sui juris*.

7. At all times material hereto, Defendant, City of Doral, was and is a Florida municipal corporation with its principal place of business located in Miami-Dade County at 8401 N.W. 53rd Terrace, Doral, Florida 33166.

8. At all times material hereto, City of Doral has operated and controlled the Doral Police Department ("the Department").

9. At all times material hereto, City of Doral was the employer of Plaintiff and is a state actor for purposes of 42 U.S.C §1983.

10. Plaintiff was at all relevant times an employee and agent of City of Doral, as a law enforcement officer for the City of Doral Police Department.

11. At all times material hereto, City of Doral was Plaintiff's employer and employed no less than fifteen (15) or more employees for each of twenty (20) or more calendar weeks of the current or preceding year, and therefore was and is an employer as that term is defined in Florida Statutes §760.02(7) and Title VII.

12. Plaintiff is an "aggrieved person" as that term is defined by Florida Statutes §760.02(10) and Title VII because she filed a complaint with the EEOC.

## PROCEDURAL REQUIREMENTS

13. All conditions precedent to this action have been fulfilled.

14. On or about October 12, 2018 Plaintiff provided notice of her potential claims to City of Doral's City Manager, Edward A. Rojas, as required by Fla. Stat. § 768.28(6).

15. Additionally, on August 27, 2018, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), claiming discrimination based on sex and retaliation. On November 2, 2018, Plaintiff filed an Amended Charge of Discrimination with the EEOC.

16. On March 27, 2020, after more than six (6) months had passed from the initial filing of her Charge of Discrimination, Plaintiff requested a Notice of Right to Sue from the EEOC.

17. On or about September 1, 2020, the U.S. Department of Justice served Plaintiff with its Notice of Right to Sue in connection with this matter. Therefore, this Complaint is timely.

18. Plaintiff has complied with all conditions precedent to suit, including compliance with Fla. Stat. §768.28(6) and its requirements.

19. Plaintiff has exhausted her all of her administrative remedies and has performed all conditions precedent necessary to the maintenance of this action, including timely filing of Charge No. 510-2018-06107 with the United States Equal Employment Opportunity Commission alleging violations of Title VII and the FCRA pursuant to the provisions of 42 U.S.C. §2000e-5, receipt of a Notice of Right to Sue from the EEOC with respect to said charge, and the timely filing of this action.

## <u>FACTUAL ALLEGATIONS</u>

20. On or about April 14, 2008, Plaintiff was hired by the City of Doral Police Department (the "Department").

21. In the years that followed, Plaintiff was subjected to increasing harassment, discrimination, retaliation, and humiliation in the workplace, among other disparate treatment, based on her female gender in the male-dominated Department.

22. In the City of Doral Police Department, there is a "good old boy" culture promulgated by the male-dominated Department, condoned and accept by the City, that diminishes the role of female employees, wherein female employees who do not willingly accept their relegated roles, such as Plaintiff, are subjected to false allegations, unjustified diminishment of performance reviews, baseless allegations of improper conduct and investigations, and subjected to a hostile work environment, of which similarly situated male employees are not subjected, in order to force such female employees to leave the Department voluntarily, or to provide false bases for female employees to be terminated.

23. The above-mentioned practices directly impact the ability of female employees, such as Plaintiff, to rise amongst the ranks and adversely affects their income and opportunities for advancement.

24. On the basis of her female gender, Plaintiff has been subjected to sexual harassment and sexual discrimination by the Department, and disparate terms and conditions of employment through, *inter alia*, false allegations, fabricated internal investigations, purposeful and unjustified reprimanding of Plaintiff, derogatory comments and statements, and a hostile work environment that caused Plaintiff psychological and emotional distress and fear for her safety at work.

25. Further, upon Plaintiff engaging in protected activity, Plaintiff was subjected to retaliation through, *inter alia*, taunting, pretextual complaints, threats of write-ups, threats of termination, and efforts in lowering her performance evaluations, and increased disparate terms and conditions of employment.

26. Plaintiff has been subjected to harassment, discrimination, and retaliation by employees of the Department and members of the Department's Command Staff, including but not limited to Chief Hernan Organvidez ("Chief Organvidez"), Major Jose Seiglie ("Major Seiglie"), Sergeant Eric Fernandez ("Sgt. Fernandez"), Sergeant Nilsa Mercado ("Sgt. Mercado").

27. At all times material hereto, Plaintiff has been subjected to an ongoing campaign of harassment, discrimination, and disparate terms and conditions of employment on the basis of Plaintiff's female gender.

28. For example, Plaintiff was constantly persecuted and harassed because "she was an easy target" and that Chief Organvidez and Chief Ubieta viewed her as an "airhead," and that Plaintiff's makeup and long eyelashes gave them that impression, stating that they often say "here she comes with her eyelashes!"

29. Major Seiglie has indicated on certain occasions that he wanted Plaintiff to be written up for any reason, and has held meetings with other members of the Department's Command Staff in order to coordinate a campaign to harass, discriminate against, and humiliate Plaintiff.

30. Further, at the command of Major Seiglie, Sgt. Fernandez recruited other officers such as Sergeant Tellez ("Sgt. Tellez") to fabricate allegations and baseless investigations in order to reprimand Plaintiff with the hope this would result in the termination of Plaintiff's employment with the Department.

31. Most recently, within the last two years, Plaintiff has been victim to a series of actions and events that constituted clear and unequivocal sexual harassment, sexual discrimination, and retaliation by the Department.

32. On May 18, 2018, an active shooter incident occurred at Trump National Doral ("TND"), whereby several law enforcement agencies responded to the call, including Plaintiff.

33. Plaintiff arrived at the scene shortly before Sgt. Fernandez. Upon arriving, it is known that Sgt. Fernandez asked Plaintiff whether she was "okay" as she helped patrons to evacuate the premises. Additionally, on scene was Lieutenant Catherine Jewett ("Lt. Jewett") who interacted with Plaintiff on scene for purposes of scene investigation.

34. After the incident, Sgt. Fernandez claimed he witnessed a City of Doral Police Officer (Plaintiff) commit an act of "cowardice" at Northwest 25th Street by taking a longer route to the scene rather than the shorter route to the scene. Cowardice is considered career-threatening if not career-ending, and very difficult to recover from professionally, perhaps one of worst offenses for a police officer.

35. On May 22, 2018, Sgt. Tellez wrote a memorandum to Sgt. Fernandez alleging he had a conversation with the Plaintiff regarding traffic cameras on Northwest 25th Street, whereby Sgt. Tellez alleged that Plaintiff was asking Sgt. Tellez if knew whether there were any cameras on Northwest 25th Street, the same street where the reported act of cowardice took place.

36. In fact, the conversation between Sgt. Tellez and Plaintiff never took place, as Plaintiff made clear during the internal affairs interview mentioned below. Plaintiff at the time had been working with the Department for over ten (10) years and knew where every camera in the city was and thus there was no need for her to have that conversation with Sgt. Tellez.

37. It should be noted that around the same time, Sgt. Tellez had been interviewing for a potential K-9 position with Major Seiglie and Sgt. Fernandez. After turning in the memorandum, Sgt. Tellez was offered the K-9 position but due to issues with the K-9, he was unable to proceed. Nevertheless, Sgt. Tellez was promoted to Sergeant. Sgt. Tellez and Sgt. Fernandez became very close after the incident, frequenting cigar bars together. It became evident that Sgt. Fernandez had recruited Sgt. Tellez to manufacture a complaint against Plaintiff.

38. Nevertheless, on June 3, 2018, upon receiving the memo from Sgt. Tellez, Plaintiff was subject to false allegations by Sgt. Fernandez after he wrote an unfounded memorandum to Major Seiglie regarding Plaintiff's response to the active shooter incident at TND, alleging, without any evidence or proof thereof, that Plaintiff intentionally drove away from the active shooter scene.

39. On June 4, 2018, a complaint intake form was prepared by Captain Rafael Tapanes ("Captain Tapanes").

40. On June 6, 2018, Sgt. Fernandez filed his complaint against Plaintiff with the Doral Police Department via Complaint Form. The complaint referenced the memorandum written by Sgt. Fernandez to Major Seiglie alleging cowardice against Plaintiff even though Sgt. Fernandez was not aware of the identity of the driver that day. Rather, Sgt. Fernandez blindly proceeded to conclude on his own accord and without any proof that the driver was the Plaintiff.

41. Thereafter, Plaintiff was subjected to retaliatory actions by her Command Staff, as well as verbal malicious rumors and harassment from other officers in the Department based on the false and unfounded allegations that she committed an act of cowardice.

42. As a result of the unfounded complaint, Chief Organvidez directed Captain Tapanes to initiate an internal affairs investigation. From this moment in time, Plaintiff became the subject of a

fabricated internal investigation initiated by Major Seiglie and Chief Organvidez in order to harass, discriminate, and humiliate the Plaintiff all because of her sex/gender as a woman within the Department.

43. The fabricated internal investigation commenced, and on June 18, 2018, Captain Tapanes notified the Plaintiff that she had been identified as a subject member in an Internal Investigation, Case Number 2018-03 (IA 2018-03) that was being conducted by the Department. The notice provided identified "cowardice" as the allegation against Plaintiff.

44. On June 21, 2018, Captain Tapanes ordered Plaintiff to report to the internal affairs office to give a statement. Additionally, the Captain notified Plaintiff that she was a subject of the investigation, and thus had the right to have a representative present during the interrogation. The investigation would temporarily cease upon an EEOC Complaint later filed by the Plaintiff.

45. Nevertheless, Chief Organvidez continued to harass, discriminate, and humiliate the Plaintiff, this time going so far as to fire and eliminate Captain Tapanes' position and replace him with an Internal Affairs Investigator, Glenn Stolzenberg ("Stolzenberg"). Stolzenberg took over the internal investigation involving the Plaintiff. Stolzenberg would act based on Major Seiglie and Chief Organvidez' orders.

46. On July 11, 2018, based upon the continued discrimination and harassment, including the constant harassment and being labeled as a "coward" and "that piece of shit" due to the false allegations and fabricated international investigation, Plaintiff was forced to file a Sexual Hostile Work Complaint with the City of Doral, received by Melissa Bandos in the Human Resources Department.

47. Plaintiff then continued to be subjected to retaliation by Major Seiglie and others based on trivial and pretextual issues including but not limited to, the way she wrote her work notes, wrote her emails, filled out her paperwork, wore her shoes, wore her uniform, or did her nails.

48. Plaintiff was given the "silent treatment" within the Department, with many officers refusing to speak with her because of the Complaint she filed on July 11, 2018. However, no *bona fide* action was taken by the Department to address the Complaint.

49. On August 27, 2018, because Plaintiff never received any information regarding her Sexual Hostile Complaint that she filed on July 11, 2018, Plaintiff was forced to file a Charge of Discrimination with the EEOC.

50. The investigation continued, and Chief Organvidez directed Stolzenberg to revise all police department's internal affairs policies and changed his role from decision-maker to fact finder, aiming to further harass the Plaintiff by giving more power to Stolzenberg in Plaintiff's investigation.

51. During the investigation, Major Seiglie also commanded officers such as Lieutenant Yohan Martinez ("Lt. Martinez") to "only" look at the cameras that focused on Plaintiff's vehicle.

52. Other officers indicated that they were approached by Sgt. Fernandez in the presence of other officers such as Officer Sweissberger and Officer Diaz asking them to say that the violating officer in the investigation was the Plaintiff.

53. Further, Sgt. Tellez formed group chats in relation to the active shooter incident, whereby Sgt. Tellez referred to Plaintiff as "that piece of shit."

54. On September 2018, Chief Organvidez directed Stolzenberg to take a "harder" look at the investigation against the Plaintiff. However, after reviewing the findings, Stolzenberg informed Chief Organvidez that there was insufficient evidence to substantiate a finding that

the Plaintiff was the officer observed driving away from the incident. The driver seen driving away from the incident was designated as "an unknown police officer."

55. Nevertheless, between August 23, 2018 and October 17, 2018, Plaintiff was informed on three separate occasions that she was the subject of the investigation.

56. October 17, 2018, Plaintiff was suddenly notified by Stolzenberg that she no longer was the subject of the investigation, but rather was a witness officer. However, despite this representation, Plaintiff was for all intents and purposes still the subject of the City's investigation into the cowardice allegation.

57. Plaintiff was asked to come for an interview without a representative as she was merely a "witness officer." However, Plaintiff stated to Stolzenberg she was not going to participate in the interview without her representative. It was at this point that Plaintiff was victim to threats of termination by Stolzenberg, telling Plaintiff that if she did not participate in the interview, then her command would cease, and she would be relieved from duty. As a result, Plaintiff attended the interview.

58. Prior to beginning the interview, Plaintiff asked who the subject of the interview was, and Stolzenberg responded "We don't know. We're here to find out."

59. Plaintiff was subject to harassment and discrimination in the interview with Stolzenberg at the internal affairs office, whereby the Plaintiff was being set up and forced into an interview to elicit incriminating statements so that she could be reclassified from witness to subject based on her responses.

60. The investigation was ultimately fabricated in order to purposefully harass and discriminate against the Plaintiff going as so far as to violate her rights to having a representative present,

attempting to elicit incriminating statements, and manufacturing false allegations against her, all because she is a woman in a male dominated Department.

61. Ultimately, the investigation was unfounded, and changed from internal affairs investigation to general investigation because no subject officer could be identified.

62. Such fabricated investigation was harassing and discriminatory against Plaintiff simply because she is a woman working in the Department. No other male officer was put in the position as Plaintiff, and no other male officer was subjected to a fabricated investigation that contained no authentic evidence. Further, several pieces of evidence were excluded from the investigation and several officers lied under oath throughout.

63. On February 25, 2019, Plaintiff filed an amended unfair labor practice charge with the Public Employees Relations Commission ("PERC") based on improprieties in the internal affairs investigation.

64. On August 23, 2019, PERC sustained Plaintiff's charge, finding that the hearing officer's findings of fact were supported by competent evidence received in a proceeding that satisfied the essential requirements of law. Even though the Department was to post the results internally at the station, they were never posted.

65. Plaintiff was the victim of several more instances of harassment and discrimination based on her sex/gender as a woman that included baseless reprimands for issues such as her response time to a hit and run call, clocking in at the courthouse, the manner in which she filled out her DUI worksheets, and how she wore her uniform.

66. In the instance of the reprimand Plaintiff received in regard to her response time to a hit and run police call, Plaintiff and Officer Desius both responded to the call under Sergeant Cengel's supervision. The caller complained about the amount of time it took for the officers to arrive

on scene. Sergeant Cengel submitted a memorandum to Major Seiglie and Lt. Jewett addressing the cause for delay, however, Major Seiglie urged for Sergeant Cengel to find that Plaintiff was somehow culpable even though Sergeant Cengel knew the problem was due to a CAD problem, not the Plaintiff.

67. After Sergeant Cengel denied this request due to her honesty and integrity, Major Seiglie assigned the investigation to Lt. Jewett, somebody he believed would do as he wished, sending multiple emails with statements such as "this evening can you follow up on the following: recommended discipline on the Bardelas hit and run call 'both' Officer and Supervisor. Thank you."

68. Most importantly however, is the fact that the citizen who called regarding the delays actually wanted to commend Plaintiff for going "above and beyond" to assist her daughter during her time of need.

69. Even though Plaintiff received some sort of protection of honesty and integrity from her immediate supervisor, Major Seiglie still threatened to discipline Plaintiff's supervisor for failure to discipline Plaintiff as he wished her to do so, as well as lowering the initial evaluations issued by Plaintiff's supervisor.

70. Officer Desuis, a male officer who was on duty and responded to the hit and run call with Plaintiff, was never reprimanded, while Plaintiff was subjected to the treatment set forth above.

71. On another specific occasion, Plaintiff was baselessly scrutinized for clocking in via her laptop while she was at the courthouse, even though Major Seiglie had previously approved doing so.

72. Even though Plaintiff has seniority over other Officers, Plaintiff has been exempted from working overtime while other officers are allowed, in an effort to further discriminate and

harass Plaintiff. When emails are sent up the chain of command inquiring about this, they are ignored.

73. Plaintiff on many occasions was harassed by Sgt. Mercado by having her commendations withheld for long periods of time. Further, Sgt. Mercado would often fail to turn in Plaintiff's paperwork or would hold her paperwork for weeks at a time so as to make Plaintiff appear unprofessional. When Sgt. Fernandez filed his complaint alleging cowardice against Plaintiff, attached was a manifesto several pages long alleging that Plaintiff was always turning in her work late, however, upon Plaintiff showing emails and other proof that she was not, the issue was immediately dropped and disappeared.

74. Other instances of harassment, discrimination, and retaliation occurred when Major Seiglie attempted to baselessly diminish Plaintiff's work evaluations, lowering her evaluations even though her supervisor issued a higher score, intentionally looking for flaws, and making higher number of negative comments compared to other male officer's evaluations.

75. In 2020, Captain Organvidez requested a meeting with Plaintiff's supervisor in order to have her evaluation lowered. Even though an exceptional justification memorandum was issued to justify Plaintiff's exceptional evaluation, that memorandum was simply shredded.

76. Further, Major Seiglie was constantly scrutinizing Plaintiff's work and asking employees such as Ailin Morales, the DUI/Records Liaison, for Plaintiff's paperwork in order to further use it against Plaintiff. Ailin Morales has also indicated that Major Seiglie only watched Plaintiff's vehicle when car trackers were installed. All of this was done in order to further lower her evaluations and ridicule Plaintiff for the purpose of harassing and discriminating against her.

77. Plaintiff was further harassed on one instance dealing with DUI worksheets, whereby Major Seiglie claimed Plaintiff should be disciplined due to the way she prepared her DUI worksheets

by including more witness officers then necessary, even though Plaintiff was told she must include all witnesses on scene.

78. Plaintiff, who issues the highest number of DUI's in the Department, never had any issues adding more than "two witnesses" into the worksheets when giving DUIs. As a matter of fact, Plaintiff checked in with the States Attorney's Office ("SAO") to confirm she was allowed to do what she normally did and it was confirmed she was indeed allowed to do so by the SAO.

79. However, after Chief Organvidez took over in 2018, Plaintiff was suddenly told she was not supposed to complete her worksheets in this manner, another method and instance of trying to set up Plaintiff so she may be terminated due to the animosity arising out of Plaintiff's her sex/gender.

80. Further, DUI worksheets are typically put into the system and sent into court. However, Plaintiff once found her inbox with ten citations that had been outstanding for three months. When she inquired as to why they were in her mailbox rather than having been entered into the system, nobody gave her a response as to why this occurred. It was evident somebody in the Department was trying to set Plaintiff up to be reprimanded for tardiness.

81. Further, Sgt. Mercado had informed Major Seiglie in the past that Plaintiff's worksheets were often tardy, incorrect, and incomplete, when in fact, Sgt. Mercado consistently held onto or "misplaced" Plaintiff's paperwork for two weeks at a time so that Plaintiff would be reprimanded for tardiness.

82. On several occasions, Plaintiff has been singled out and accused of violating the dress code policy even though other similarly situated males are never reprimanded for doing so.

83. At the direction of the Command Staff, Lt. Jewett has reprimanded Plaintiff for having her nails "too shiny". Further, male officers wear jeans to court and other unapproved clothing but

are not reprimanded. Plaintiff has consistently been reprimanded for not wearing the correct boots even though the retail store does not hold her size. As such, and as witnessed by other officers, Plaintiff had to go out of her way to purchase costlier boots in order to wear them for work, yet she was still reprimanded for violation of the dress code policy.

84. Plaintiff has been consistently retaliated against after she performed protected activity that included her filing of a Sexual Hostile Work Complaint and then an EEOC Complaint through the use of taunting, including statements from Major Seiglie and other members of the Department's Command Staff, as well as the aforementioned conduct reprimanding Plaintiff.

85. After Plaintiff filed her EEOC Complaint, members of the Department Command Staff asked Plaintiff questions regarding the EEOC Complaint, stating "if you don't have facts, you have nothing!" and "they asked us questions but we denied everything", so as to dismiss Plaintiff's EEOC Complaint.

86. Further, members of the Department's Command Staff disparaged Plaintiff, as well as her supervisor, Sergeant Cengel, stating that "their careers are done" because they both filed Charges with the EEOC, further evidencing the retaliatory animus against Plaintiff.

87. On another instance, a Department employee overheard Captain Fernandez telling a Department employee Orlando Sanchez that the individuals filing EEOC Complaints need to be put "in a raft together and shipped back to their fucking countries," referring to Plaintiff. Orlando Sanchez later reprimanded the witness employee for "sharing what he had heard."

88. On another occasion, an undisclosed officer indicated that while in the City of Doral's Motor Unit, he overheard Chief Organvidez tell another member of the Department that he "wiped his ass with the EEOC Complaints."

89. Similarly situated male employees such as Officer Chris Fabregas, Sgt. Tellez, Sgt. Fernandez, Officer Romo, Officer Desuis, and Detective Delgado were treated more favorably than Plaintiff, never having been properly reprimanded for their actions.

90. Officer Fabregas was caught in a fight at the Hard Rock Hotel and Casino, yet Major Seiglie took him home in his car to sleep and was never reprimanded.

91. Sgt. Fernandez left his gun at the bathroom in the courthouse, yet he was never reprimanded for this dangerous activity. Further, Sgt. Fernandez shot himself during an unauthorized training, yet it was covered up and he was never reprimanded. Instead, Sgt. Fernandez was promoted to an administrator position next to the Chief.

92. Detective Delgado was in a hit and run accident while off duty with a Department vehicle and was never given a DUI examination/test, which is procedure Sgt. Mercado's several policy violations were overlooked regarding Detective Delgado's case, allowing Detective Delgado to go back to work without being reprimanded.

93. Cases against officers such as Officer Romo were often closed quickly compared to Plaintiff's cases because the Department was not "after blood" towards Officer Romo like they were against Plaintiff.

94. Officer Desuis, who was on duty and responded to the hit and run call with Plaintiff, similarly was never reprimanded, while Plaintiff was as set forth above.

95. The aforementioned conduct violated the City of Doral's own Municipal Charter.

96. Specifically, Doral, by and through its employees, agents, servants, and the Department, violated the Citizen's Bill of Rights (A)(2).

97. Doral violated the above Section when the employees and agents in the Department, such as Chief Hernan Organvidez, Major Jose Seiglie, Sergeant Eric Fernandez, and Sergeant Nilsa

16

Mercado discriminated, harassed, humiliated, punished, disciplined, and retaliated against female police officers, including Plaintiff, who work and have worked as a law enforcement officers within the Department.

98. As of the filing of this Complaint, Plaintiff remains employed with the Department and continues to be subjected to discriminatory treatment and retaliation in violation of law.

99. Plaintiff has retained the law offices of the undersigned attorneys to represent her in this action and is obligated to pay reasonable attorneys' fees and costs.

**COUNT I – SEX DISCRIMINATION AGAINST CITY OF DORAL**
**Under Florida Civil Rights Act of 1992 (FCRA), 760.01 et seq., Fla. Stat.**

Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 – 99, as if fully set forth herein.

100.    Plaintiff is a woman and is a "person aggrieved" under the FCRA.

101.    At all times material hereto, Doral is and has been Plaintiff's "employer" under the FCRA.

102.    Section 760.10 of the FCRA states in relevant part:

"(1) It is an unlawful employment practice for an employer:

To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

103.    The FCRA accordingly prohibits discrimination based on sex.

104.    The treatment and discrimination to which Plaintiff has been subjected by Doral and the Department, as set forth above and incorporated herein, has been the result of Plaintiff's sex/gender, which similarly situated male employees in the Department have not been and would not have been subjected, in violation of the FCRA.

105.   Plaintiff has been subjected to multiple adverse employment actions, including discrimination and harassment on the basis of her sex, and a hostile work environment, as more fully set forth above.

106.   Similarly situated male employees, such as Officer Chris Fabregas, Sgt. Tellez, Sgt. Fernandez, Officer Romo, Officer Desuis, and Detective Delgado were treated more favorably than Plaintiff, as set forth in detail above. The foregoing male employees are or have been similarly situated to Plaintiff in all relevant respects, including ranks, experience level, and assigned duties.

107.   The acts of sex discrimination described hereinabove including, but not limited to, making false allegations, fabricating internal investigations, purposefully reprimanding Plaintiff, making derogatory comments and statements, singling out Plaintiff's work, singling out Plaintiff's uniform, lowering Plaintiff's evaluations, among other discriminatory actions, constituted adverse employment actions and were sufficiently severe and pervasive so as to create an intolerable hostile working environment, affecting the terms and conditions of the Plaintiff's employment.

108.   The acts of sex discrimination described hereinabove were unwelcome and offensive to Plaintiff.

109.   Doral knew or should have known of the acts of sex discrimination described hereinabove and failed to take prompt corrective action to remedy the harassment, and at all times relevant to this action, the employees, agents, and elected officials of Doral were in the control of the Department, and the Department officers and employees referred to hereinabove were employees and/or agents of Doral and were acting in the course and the scope of their authority.

110.    Doral's alleged bases for its adverse conduct against Plaintiff are pretextual and asserted only to cover up the discriminatory nature of its conduct.

111.    Even if Doral could assert legitimate reasons for its adverse actions against Plaintiff, for which reasons it does not have, Plaintiff's sex/gender was also a motivating factor for Doral's adverse conduct toward Plaintiff.

112.    Doral, as the employer of Plaintiff, has failed to take any prompt and effective remedial action reasonably calculated to result in the prevention and/or remedy of the sex discrimination of Plaintiff.

113.    Furthermore, as a result of Doral's discriminatory actions due to her sex/gender, including but not limited to making false allegations and fabricating internal investigations, Plaintiff has experienced and will continue to experience significant financial and economic loss in the form of lost wages and lost benefits. Plaintiff has also experienced and will continue to experience emotional anguish, pain and suffering and loss of dignity damages. Plaintiff accordingly demands lost economic damages in the form of back pay and front pay, interest, lost benefits, and compensatory damages.

114.    Plaintiff further seeks her attorney's fees and costs as permitted by law.

WHEREFORE, Plaintiff respectfully invokes the remedial powers of this Court as provided in the Florida Civil Rights Act of 1992, and prays for the entry of a judgment in her favor and against Defendant, City of Doral:

A.  Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Plaintiff;

B.  Awarding Plaintiff any and all damages available to her including, but not limited to her back pay, front pay, prejudgment interest, and damages for all employment benefits she would have received but for the discriminatory acts and practices of Defendant;

C. Declaring Defendant's conduct to be in violation of the FCRA and ordering Defendant to institute policies, practices, and programs which provide equal employment opportunities for individuals and which eradicate the effects of its past and present unlawful practices;

D. Awarding Plaintiff compensatory damages against Defendant; and

E. Awarding reasonable attorneys' fees and costs incurred in this action.

## COUNT II – SEX DISCRIMINATION AGAINST CITY OF DORAL
### Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000

Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 – 99, as if fully set forth herein.

115.   Plaintiff is a woman and is an "individual" and "employee" under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*

116.   Doral is a "person" and an "employer" of Plaintiff under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*

117.   Title VII of the Civil Rights Act of 1964 states, *inter alia*, that "[i]t shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin…". *See* 42 U.S.C. §2000e et seq.

118.   The acts of discrimination described herein were done on account of Plaintiff's sex.

119.   Plaintiff was clearly qualified for her position, as she has received countless positive performance evaluations, commendations, and has been employed by Doral and the Department for twelve (12) years.

120.   Plaintiff has been subjected to multiple adverse employment actions by the Department, including discrimination, harassment, and retaliation.

121.   Similarly situated male employees, such as such as Officer Chris Fabregas, Sgt. Tellez, Sgt. Fernandez, Officer Romo, Officer Desuis, and Detective Delgado were treated more favorably than Plaintiff, as set forth in previous examples. The foregoing male individuals are or have been similar to Plaintiff in all relevant respects, including rank, experience level, and assigned duties.

122.   The acts of sex discrimination described hereinabove including, but not limited to, making false allegations, fabricating internal investigations, purposefully reprimanding Plaintiff, making derogatory comments and statements, singling out Plaintiff's work, singling out Plaintiff's uniform, lowering Plaintiff's evaluations, among other discriminatory actions, constituted adverse employment actions and were sufficiently severe and pervasive so as to create an intolerable hostile working environment, affecting the terms and conditions of the Plaintiff's employment.

123.   The acts of sex discrimination described hereinabove were unwelcome and offensive to the Plaintiff.

124.   Doral knew or should have known of the acts of sex discrimination described hereinabove and failed to take prompt corrective action to remedy the harassment, and at all times relevant to this action, the employees, agents, and elected officials of Doral were in the control of the Department, and the Department officers and employees referred to hereinabove were employees and/or agents of Doral and were acting in the course and the scope of their authority.

125.   The foregoing acts of sex discrimination violated Plaintiff's right to be free from sex discrimination under Title VII.

126.    As a direct result of the foregoing acts of sex discrimination, Plaintiff has lost wages and other employment benefits and/or has suffered emotional distress, humiliation, embarrassment, anguish, and loss of enjoyment of life.

WHEREFORE, Plaintiff respectfully invokes the remedial powers of this Court as provided under Title VII, and prays for a judgment against Defendant, the City of Doral:

A.  Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Plaintiff;

B.  Awarding Plaintiff any and all damages available to her including, but not limited to her back pay, front pay, prejudgment interest, and damages for all employment benefits she would have received but for the discriminatory acts and practices of Defendant;

C.  Declaring Defendant's conduct to be in violation of Title VII and ordering Defendant to institute policies, practices, and programs which provide equal employment opportunities for individuals and which eradicate the effects of its past and present unlawful practices;

D.  Awarding Plaintiff compensatory damages against Defendant; and

E.  Awarding reasonable attorneys' fees and costs incurred in this action.

## COUNT III – HOSTILE WORK ENVIRONMENT AGAINST CITY OF DORAL

Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 – 99, as if fully set forth herein.

127.    By the above alleged acts, Defendant has violated Title VII's guarantee of the right to work in an environment free from intimidation, ridicule, and insult.

128.    Throughout Plaintiff's employment and continuing to this day, the Department has maintained a hostile working environment contaminated by a pattern of offensive conduct, including harassment and discrimination directed at women, and in particular, Plaintiff. Such conduct has been severe, pervasive, and ongoing.

129.    The acts of harassment and discrimination described herein occurred because of Plaintiff's membership in a protected class as a woman, and because of Plaintiff's complaints about same.

130.    Indeed, the hostile work environment has been worsened by the Department's subjecting Plaintiff to continued acts of retaliation, which have occurred because of Plaintiff's complaints about harassment and discrimination to which she continues to be subjected.

131.    Plaintiff was clearly qualified for her job as she had received countless positive performance evaluations and had been employed by Doral and the Department for over twenty years.

132.    Plaintiff was subjected to multiple adverse employment actions, including discrimination, harassment, and retaliation from the Department.

133.    Similarly situated male employees, such as such as Officer Chris Fabregas, Sgt. Tellez, Sgt. Fernandez, Officer Romo, Officer Desuis, and Detective Delgado were treated more favorably than Plaintiff, as set forth in previous examples. The foregoing male individuals are or have been similar to Plaintiff in all relevant respects, including rank, experience level, and assigned duties.

134.    The acts of sex discrimination described hereinabove including, but not limited to, making false allegations, fabricating internal investigations, purposefully reprimanding Plaintiff, making derogatory comments and statements, singling out Plaintiff's work, singling out Plaintiff's uniform, lowering Plaintiff's evaluations, among other discriminatory actions, constituted adverse employment actions and were sufficiently severe and pervasive so as to create an intolerable hostile working environment, affecting the terms and conditions of the Plaintiff's employment.

135.    The acts of harassment and discrimination described hereinabove were unwelcome and offensive to Plaintiff.

136.    The Department has engaged in the discriminatory practices complained of herein.

137.    The Department's Command Staff, including but not limited to Chief Organvidez, Major Seiglie, Sgt. Fernandez, and Sgt. Mercado, knew or should have known of the acts of sex discrimination, harassment, and retaliation described hereinabove and failed to take prompt corrective action to remedy the acts and conduct.

138.    Doral knew or should have known of the acts of sex discrimination, harassment, and retaliation that formed this hostile work environment described hereinabove and failed to take prompt corrective action to remedy the harassment, and at all times relevant to this action, the employees, agents, and elected officials of Doral were in the control of the Department, and the Department officers and employees referred to hereinabove were employees and/or agents of Doral and were acting in the course and the scope of their authority.

139.    Defendant took no steps to stop the harassment of Plaintiff.

140.    The harassment was severe or pervasive enough to change the conditions of Plaintiff's employment and create an abusive environment, judged by both an objective standard and a subjective standard.

141.    Plaintiff took advantage of all preventative or corrective opportunities as provided by the Defendant and did everything possible to avoid the harm.

142.    Plaintiff has been damaged because of said hostile work environment.

WHEREFORE, Plaintiff prays for the entry of a judgment in her favor and against, Defendant, City of Doral, awarding damages in the form of back pay and front pay, lost wages, interest, lost benefits, as well as compensatory damages and attorney's fees and costs, as well as any further relief the Court deems equitable and just.

<u>**COUNT IV – CIVIL RIGHTS VIOLATIONS**</u>
**Under 42 U.S.C. §1983 Against City of Doral**

Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 – 99, as if fully set forth herein.

143.   42 U.S.C. § 1983 states, *inter alia*, as follows:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ..."

144.   Doral is a "person" for purposes of § 1983 and Doral is therefore a proper defendant in this § 1983 Action.

145.   Doral, under color of law, by the enforcement of a municipal policy, a municipal practice, or a decision of a municipal final policymaker, subjected Plaintiff to the deprivation of her right to Freedom of Association pursuant to the First Amendment to the United States Constitution, and is therefore liable for the damages and other relief sought in this Action.

146.   Plaintiff was an employee of Doral from 2008 to present.

147.   For the majority of Plaintiff's employment, and at all times relevant hereto, the City of Doral Police Department's Command Staff included but was not limited to Chief Organvidez, Major Seiglie, Sgt. Fernandez. and Sgt. Mercado.

148.   Upon information and belief, the Department's Command Staff knew that Plaintiff was not the proper subject of an internal investigation fabricated by the Department, nor was Plaintiff the proper subject of negative evaluations, internal complaints, internal write ups, and/or the like, but deliberately made the Plaintiff such a subject of the aforementioned.

149.   This belief is based on statements, emails, phone calls, and interviews, as well as conversations between fellow officers and Plaintiff.

150.   As a female employee of the City of Doral Police Department, Plaintiff was "set up" and made the target and subject of a fabricated internal investigation, as well as "set up" in order to be terminated from her position in the Department because she is a woman.

151.   At all material times hereto, Plaintiff's conduct constituted an individual, legally protected association under the First Amendment to the United States Constitution.

152.   Throughout Plaintiff's time at the Department, the Command Staff made Plaintiff the target and subject of a fabricated investigation, labeling her as a "coward" within the Department. The Command Staff further prohibited Plaintiff from establishing a common association amongst her fellow officers by placing her in position of humiliation and insult as being named a "coward" is one of the worst offenses in the police department. All of this conduct from the Command Staff constituted a prohibition on Plaintiff's ability to associate freely and willingly within the Department in order to pursue her goals and promotional opportunities.

153.   Due to Plaintiff being a woman, the Command Staff harassed, discriminated, retaliated against, and constructively prohibited Plaintiff from associating within the Department.

154.   Doral provided pretextual and false reasons for its disciplinary actions towards Plaintiff.

155.   The proffered reasons were mere pretexts for the violation of Plaintiff's First Amendment right to Freedom of Association as Plaintiff did the aforementioned just like any other officer in the Department had done, including male officers.

156.   Plaintiff's conduct as a woman, including her dress code, her work ethic, and inquiring about disparate treatment against her was a substantial or motivating factor in Defendants' adverse employment actions.

157.  The conduct described herein constituted adverse employment actions and were sufficiently severe and pervasive so as to create an intolerable hostile working environment, affecting the terms and conditions of the Plaintiff's employment.

158.  As a direct and proximate result of Plaintiff's actions in violation of Plaintiff's First Amendment right to Freedom of Association, Plaintiff has incurred and continues to incur damages, including without limitation lost wages, lost benefits, lost promotions, lost perquisites, termination, and other lost remuneration and economic opportunities.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment against Defendant, City of Doral, awarding Plaintiff compensatory damages as well as costs, interest, attorneys' fees, pursuant to 42 U.S.C. § 1988, and any such further relief this Court deems just and proper.

## COUNT V – VIOLATION OF THE CONSTITUTIONAL RIGHT TO FREE SPEECH
### (First Amendment Retaliation Against City of Doral)

Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 – 99, as if fully set forth herein.

159.  The United States Constitution's First Amendment guarantee to free speech applies to local and state governments through decisions of the United States Supreme Court, as well as through the Fourteenth Amendment.

160.  At all times relevant hereto, Plaintiff was an employee of Doral.

161.  Doral is a municipal government.

162.  At all times material hereto, Doral has operated and controlled the City of Doral Police Department ("the Department").

163.  Plaintiff, as an officer within the Department, often tried to make statements in regard to job opportunities, complaints against her, and why she was being persecuted and purposefully

harassed. Further, Plaintiff filed Complaints for sexual harassment and discrimination against the Department.

164.    The Department's Command Staff retaliated against Plaintiff for being outspoken as a woman in a Department run by men, denying her the opportunity to be free from such persecution and harassment, and denying her the opportunity to work freely without interruption.

165.    Plaintiff's freedom of speech was violated by the Command Staff and other officers through the use of retaliation and harassment that would put her career at risk if she made statements, inquiries, or comments regarding any disparate treatment against her.

166.    The Command Staff and other officers violated Plaintiff's freedom of speech by harassing her and targeting her with a fabricated internal investigation, along with false allegations towards her work performance and product.

167.    The Command Staff and other officers further retaliated against Plaintiff through the specific enforcement of rarely enforced policies, negative evaluations, threats of termination, and any efforts to reprimand her work performance while on duty in an effort to target Plaintiff after her filing of her Sexual Hostile Work Complaint and her subsequent complaints with the EEOC and the City.

168.    The statements and inquiries by Plaintiff did not disrupt the function of the Department.

169.    In violation of Plaintiff's First Amendment right to free speech, Doral, acting through its Police Department, harassed and discriminated against Plaintiff's employment in retaliation for the statements and inquiries she made.

170.    After Plaintiff's protected statements and disclosures, the retaliation and harassment have been continuing as of the filing of this action.

28

171.    The conduct described herein constituted adverse employment actions and were sufficiently severe and pervasive so as to create an intolerable hostile working environment, affecting the terms and conditions of the Plaintiff's employment.

172.    As a result of Doral's retaliation in violation of the First Amendment, Plaintiff has been damaged.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in her favor and against Defendant, Doral, awarding Plaintiff damages as well as costs, back pay, interest, attorneys' fees, and any such further relief this Court deems just and proper.

## COUNT VI – SEXUAL HARASSMENT AGAINST CITY OF DORAL
### Under Title VII and FCRA

Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 – 99, as if fully set forth herein.

173.    At all times material hereto, Doral has operated and controlled the City of Doral Police Department ("the Department").

174.    Doral, through the Department, created and maintained a hostile work environment for Plaintiff.

175.    The hostile work environment was because of Plaintiff's protected class as a woman.

176.    The hostile work environment is attributable to Doral as the environment was created by its Department's supervisors and employees.

177.    The sexual harassment of Plaintiff began shortly after she was hired and continues as of the filing of this Complaint.

178.    The harassment and hostile work environment has consisted of Plaintiff being subjected to, *inter alia*, false allegations, fabricated internal investigations, and being set up in order to reprimand Plaintiff's work performance, including but not limited to, by officers and

Command Staff such as Major Seiglie, Sgt. Mercado, and Sgt. Fernandez, as set forth in more detail above.

179.   Despite Plaintiff's complaints regarding these acts, the Department has taken no sufficient administrative action to discipline the involved officers, but rather chose to continue this harassment by treating Plaintiff as a problem employee.

180.   The hostile work environment was severe and pervasive enough to change the conditions of Plaintiff's employment.

181.   Any reasonable person would find the conduct to which Plaintiff has been subjected abusive.

182.   Plaintiff found the conduct abusive.

183.   Defendant's conduct unreasonably interferes with an individual's work performance or creates an intimidating, hostile, or offensive working environment (29 C.F.R.§) 1604.11(a).

WHEREFORE, respectfully invokes the remedial powers of this Court as provided in the Florida Civil Rights Act of 1992 and under Title VII, and prays for the entry of a judgment in her favor and against Defendant, City of Doral:

A.   Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Plaintiff;

B.   Awarding Plaintiff any and all damages available to her including, but not limited to her back pay, front pay, prejudgment interest, and damages for all employment benefits she would have received but for the discriminatory acts and practices of Defendant;

C.   Declaring Defendant's conduct to be in violation of Title VII and the FCRA and ordering Defendant to institute policies, practices, and programs which provide equal employment opportunities for individuals and which eradicate the effects of its past and present unlawful practices;

D.   Awarding Plaintiff compensatory damages against Defendant; and

E.   Awarding reasonable attorneys' fees and costs incurred in this action.

## COUNT VII – RETALIATION AGAINST CITY OF DORAL
### Under Title VII of The Civil Rights Act of 1964

Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 – 99, as if fully set forth herein.

184.    Plaintiff has engaged in activity protected by Title VII, including but not limited to verbally complaining, filing internal grievances, filing a Sexual Hostile Work Complaint internally with the Department, and filing a charge of discrimination with the EEOC, regarding discrimination and harassment to which she has been subjected throughout her employment with Defendant.

185.    After engaging in activity protected by Title VII, Plaintiff experienced adverse job actions, including but not limited to false allegations, fabricated internal investigations, and being set up in order to reprimand Plaintiff's work performance, subjected to an increasingly hostile work environment, and harassed.

186.    Plaintiff has been retaliated against by multiple Department employees, who are mentioned in the facts above.

187.    The retaliation is continuing in nature.

188.    The adverse job actions that Plaintiff experienced were a result of her protected activity.

189.    Plaintiff was retaliated against for engaging in activity protected by Title VII.

WHEREFORE, respectfully invokes the remedial powers of this Court as provided under Title VII, and prays for the entry of a judgment in her favor and against Defendant, City of Doral:

A. Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Plaintiff;

B. Awarding Plaintiff any and all damages available to her including, but not limited to her back pay, front pay, prejudgment interest, and damages for all employment benefits she would have received but for the discriminatory acts and practices of Defendant;

C. Declaring Defendant's conduct to be in violation of Title VII and ordering Defendant to institute policies, practices, and programs which provide equal employment opportunities for individuals and which eradicate the effects of its past and present unlawful practices;

D. Awarding Plaintiff compensatory damages against Defendant; and

E. Awarding reasonable attorneys' fees and costs incurred in this action.

<u>**COUNT VIII – RETALIATION AGAINST CITY OF DORAL**</u>
**Under Florida Civil Rights Act, Chapter 760**

Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 – 99, as if fully set forth herein.

190.    This is an action against Defendant, Doral, for unlawful retaliation under the Florida Civil Rights Act, Chapter 760, Fla. Stat. ("FCRA").

191.    The FCRA contains an anti-retaliation provision, forbidding employers from retaliating, or from taking adverse personnel action against, those employees who exercise their lawful and protected rights under the Act.

192.    The FCRA, Fla. Stat. § 760.10(7) reads in applicable part, as follows:

"It is an unlawful employment practice for an employer, an employment agency, a joint labor management committee, or a labor organization to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section".

193.    Plaintiff is a member of a protected class under Title VII and the Florida Civil Rights Act because of her Sex, and because of her participation in protected activities within the meaning of the Florida Civil Rights Act.

194.    Plaintiff, while working for the Defendant's Police Department, was subjected to discrimination and harassment on the basis of sex.

195.    Plaintiff reasonably engaged in protected activity by complaining about the unlawful discrimination and sexual harassment to the Department's Command Staff, then to Defendant's Director of Human Resources, and then to the EEOC.

196.    These complaints constituted Protected activity under Civil Rights Act of 1964 [42 U.S.C. 2000 e-2 (a)], Section 704(a).

197.    As retaliation, Plaintiff has been subjected to adverse employment actions, denied promotions for which she is qualified, subjected to an increasingly hostile work environment including acts of harassment.

198.    Defendant's acts, through its agents, were done with malice and reckless disregard for Plaintiff's rights protecting a person from discrimination due to their sex and retaliation due to their complaints of unlawful discrimination.

199.    As a direct and proximate result of the actions and omissions of Defendant, Plaintiff has suffered injury, has incurred monetary losses, and has suffered emotional distress, embarrassment and humiliation, as well as the violation of her statutory rights.

WHEREFORE, respectfully invokes the remedial powers of this Court as provided in the Florida Civil Rights Act of 1992, and prays for the entry of a judgment in her favor and against Defendant, City of Doral:

A. Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Plaintiff;

B. Awarding Plaintiff any and all damages available to her including, but not limited to her back pay, front pay, prejudgment interest, and damages for all employment benefits she would have received but for the discriminatory acts and practices of Defendant;

C. Declaring Defendant's conduct to be in violation of the FCRA and ordering Defendant to institute policies, practices, and programs which provide equal employment opportunities for individuals and which eradicate the effects of its past and present unlawful practices;

D. Awarding Plaintiff compensatory damages against Defendant; and

E.  Awarding reasonable attorneys' fees and costs incurred in this action.

## COUNT IX – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST CITY OF DORAL

Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 – 99, as if fully set forth herein.

200.   This is an action, under the common law of the State of Florida, for intentional infliction of emotion distress. Such claims arise from a common nucleus of operative facts as set forth above.

201.   At all times material hereto, the officers within the Department, specifically Chief Organvidez, Major Seiglie, Sgt. Fernandez, and Sgt. Mercado, intentionally, maliciously, and outrageously inflicted emotional distress on Plaintiff by intentionally harassing her, discriminating against her, and retaliating against her.

202.   More specifically, Major Seiglie recruited other Officers such as Lt. Jewett and Sgt. Fernandez to make false allegations and open a fabricated internal investigation against the Plaintiff in order to create a hostile work environment and in an effort to cause Plaintiff's termination from the Department. Further, Major Seiglie reprimanded Plaintiff without cause by lowering her evaluations as well as forcing her supervisors to discipline Plaintiff without justification.

203.   Furthermore, Lt. Jewett had knowledge that other Officers such as Major Seiglie and Sgt. Fernandez were out "for blood" and wanted to terminate Plaintiff from the Department due to her sex, yet was pressured to participate in reprimanding the Plaintiff and in the fabricated internal investigation in order to humiliate Plaintiff.

204.    Sgt. Fernandez, although present at the shooter incident, made false allegations and assisted in the fabricated internal investigation against the Plaintiff by writing a false memorandum to Major Seiglie regarding Plaintiff and then filing a false complaint within the Department, as well as later  recruiting other Officers to help lie and participate in reprimanding the Plaintiff.

205.    Officers within the Department such as Chief Organvidez, Major Seiglie, Sgt. Fernandez, and Sgt. Mercado all ignored Plaintiff's remarks, complaints, statements, and comments regarding the constant and continuous discrimination, harassment, and retaliation against Plaintiff within the Department that led to the filing of this Complaint.

206.    The Department Command Staff and other officers allowed Plaintiff to be continuously discriminated, harassed, and retaliated against in an extreme and outrageous manner because she was a woman.

207.    The Department Command Staff and other officers failed to condemn and/or discipline other Officers for their actions to help alleviate Plaintiff from the emotional distress caused by the extreme and outrageous conduct towards Plaintiff.

208.    The conduct was outrageous, extreme, and insulting — going beyond all bounds of decency and regarded as odious and utterly intolerable in a civilized community.

209.    Doral knew or should have known of the intentional, and extreme and outrageous acts and conduct described hereinabove and failed to take prompt corrective action to remedy the acts and conduct, and at all times relevant to this action, the employees, agents, and elected officials of Doral were in the control of the Department, and the Department officers and employees referred to hereinabove were employees and/or agents of Doral and were acting in the course and the scope of their authority.

210.    The Department's conduct caused and continues to cause Plaintiff severe emotional distress, including, but not limited to, embarrassment, humiliation, mental anguish, and suffering.

WHEREFORE, Plaintiff respectfully requests entry of judgment in her favor and against Defendant, City of Doral, awarding compensatory damages and punitive damages together with prejudgment interest, attorney's fees and costs, along with such further relief as this Court deems equitable and just.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of all issues so triable.

Dated this <u>30th</u> day of November 2020.

<div align="center" style="margin-left:40%">

Respectfully submitted,

<u>s/Robert L. Switkes</u>
Robert L. Switkes, Esq.
Florida Bar No.: 241059
rswitkes@switkeslaw.com
**SWITKES & ZAPPALA, P.A.**
407 Lincoln Road, Penthouse SE
Miami Beach, Florida 33139
Telephone: (305) 534-4757
*Attorneys for Plaintiff, Maylee Bardelas*

</div>