**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

**Case No.: 1:20-cv-24894-KMM**

MAYLEE BARDELAS,

      Plaintiff,

v.

CITY OF DORAL,
a Florida Incorporated Municipality,

      Defendant.

_____/

## FIRST AMENDED COMPLAINT

Plaintiff, MAYLEE BARDELAS ("Plaintiff"), by and though her undersigned counsel, hereby files this First Amended Complaint against Defendant, CITY OF DORAL ("Defendant" or "City of Doral"), and alleges as follows:

### NATURE OF ACTION

1. This action arises out of Plaintiff's employment relationship with Defendant and is brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000 *et seq*. ("Title VII") and the Florida Civil Rights Act of 1992, as amended, Chapter §760, Fla. Stat. ("FCRA"), to redress sex discrimination, sex-based hostile work environment, retaliation, and retaliatory hostile work environment.

### JURISDICTION AND VENUE

2. This is an action brought for damages in excess of $75,000.00, exclusive of interest, attorneys' fees, and costs.

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1137, 1343, and 1345.

1

4.  Defendant's unlawful conduct was committed within the jurisdiction of the Miami Division of the United States District Court for the Southern District of Florida.

5.  Venue of this action is properly placed in the Southern District of Florida, Miami Division, pursuant to 28 U.S.C. §1391(b), since the employment practices hereafter alleged to be unlawful were committed in Miami-Dade County, Florida.

## PARTIES

6.  At all times material hereto, Plaintiff was and is a female employed by Defendant, City of Doral, as a law enforcement officer, a resident of Miami-Dade County, and is otherwise *sui juris*.

7.  At all times material hereto, Defendant, City of Doral, was and is a Florida municipal corporation with its principal place of business located in Miami-Dade County at 8401 N.W. 53rd Terrace, Doral, Florida 33166.

8.  At all times material hereto, City of Doral has operated and controlled the Doral Police Department ("the Department").

9.  At all times material hereto, City of Doral was the employer of Plaintiff and is a state actor for purposes of Title VII and the FCRA.

10. Plaintiff was at all relevant times an employee and agent of City of Doral, as a law enforcement officer for the City of Doral Police Department.

11. At all times material hereto, City of Doral was Plaintiff's employer and employed no less than fifteen (15) or more employees for each of twenty (20) or more calendar weeks of the current or preceding year, and therefore was and is an employer as that term is defined in Florida Statutes §760.02(7) and Title VII.

12. Plaintiff is an "aggrieved person" as that term is defined by Florida Statutes §760.02(10) and Title VII because she filed a complaint with the EEOC.

## PROCEDURAL REQUIREMENTS

13. All conditions precedent to this action have been fulfilled.

14. On or about October 12, 2018 Plaintiff provided notice of her potential claims to City of Doral's City Manager, Edward A. Rojas, as required by Fla. Stat. § 768.28(6).

15. Additionally, on August 27, 2018, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), claiming discrimination based on sex and retaliation. On November 2, 2018, Plaintiff filed an Amended Charge of Discrimination with the EEOC.

16. On March 27, 2020, after more than six (6) months had passed from the initial filing of her Charge of Discrimination, Plaintiff requested a Notice of Right to Sue from the EEOC.

17. On or about September 1, 2020, the U.S. Department of Justice served Plaintiff with its Notice of Right to Sue in connection with this matter. Therefore, this Complaint is timely.

18. Plaintiff has complied with all conditions precedent to suit, including compliance with Fla. Stat. §768.28(6) and its requirements.

19. Plaintiff has exhausted her all of her administrative remedies and has performed all conditions precedent necessary to the maintenance of this action, including timely filing of Charge No. 510-2018-06107 with the United States Equal Employment Opportunity Commission alleging violations of Title VII and the FCRA pursuant to the provisions of 42 U.S.C. §2000e-5, receipt of a Notice of Right to Sue from the EEOC with respect to said charge, and the timely filing of this action.

## FACTUAL ALLEGATIONS

20. On or about April 14, 2008, Plaintiff was hired as a police officer by the City of Doral Police Department (the "Department").

21. Throughout her employment with the Department, Plaintiff, a female, has been qualified to perform the job of a police officer and has been an exemplary employee.

22. During her employment, Plaintiff has been treated differently from other similarly situated male officers and subjected to a hostile work environment by Defendant based upon Plaintiff's female gender.

23. More recently, has been retaliated against and subjected to a hostile work environment by Defendant based upon Plaintiff's engaging in protected activity in complaining about the discriminatory treatment to which she has been a victim.

24. In the City of Doral Police Department, there is a "good old boy" culture promulgated by the Command Staff of the male-dominated Department, condoned and accept by the City, that diminishes the role of female employees, wherein female employees who do not willingly accept their relegated roles or complain about the discriminatory culture, such as Plaintiff, are targeted and subjected to false allegations, unjustified diminishment of performance reviews, baseless allegations of improper conduct and investigations, denial of opportunities for advancement, reductions in pay, prestige, and responsibility, and a hostile work environment, of which similarly situated male employees are not subjected, in order to force such female employees to leave the Department voluntarily, or to provide false bases for female employees to be terminated.

25. The above-mentioned practices directly impact the ability of female employees, such as Plaintiff, to rise amongst the ranks and adversely affects their pay, prestige, responsibility, and opportunities for advancement.

26. Although Plaintiff has experienced discrimination based upon her gender at various times since the beginning of her employment with the Department, Plaintiff has been victim to a series of actions and events that have constituted clear and unequivocal sexual discrimination and retaliation within the last approximately three years since Chief Hernan Organvidez ("Chief Organvidez") was appointed as Chief of the Department.

27. In 2011, a Sergeant who was Plaintiff's direct supervisor sent Plaintiff over 700 text messages in which he sexually harassed Plaintiff, including implying that Plaintiff would face professional repercussions if she did not sleep with him.

28. Due to the culture of the Department wherein female officers who complain about harassment or object to sleeping with superiors are ostracized, Plaintiff was fearful that she would be retaliated against if she complained about the harassment from her Sergeant but told a co-worker who then reported the issue to Human Resources, which ultimately resulted in the popular Sergeant being terminated from the Department.

29. Following the Sergeant's termination, Plaintiff noticed a marked difference in how she was treated by other employees of the Department, many of whom clearly viewed Plaintiff as being responsible for the Sergeant's termination.

30. However, the outward animosity towards Plaintiff and associated issues largely abated when a new Chief, Donald De Lucca ("Chief De Lucca"), was appointed to serve as Chief of the Department in 2014, and Plaintiff was able to enjoy a significantly less hostile and discriminatory working environment until the end of Chief De Lucca's tenure in early 2018, at which time Chief Organvidez was appointed to become Chief of the Department.

31. Since Chief Organvidez was appointed in early 2018, Plaintiff has been subjected to an ongoing and systematic campaign of harassment, discrimination, a hostile work environment,

and disparate terms and conditions of employment on the basis of Plaintiff's female gender and her protected activity in complaining about such treatment.

32. Plaintiff has been subjected to sexual discrimination and a hostile work environment by the Department, and disparate terms and conditions of employment through, *inter alia*, false allegations, fabricated internal investigations, purposeful and unjustified reprimanding of Plaintiff, derogatory comments and statements, and a hostile work environment that has caused Plaintiff psychological and emotional distress and fear for her safety at work.

33. Further, upon Plaintiff engaging in protected activity, Plaintiff was subjected to retaliation and a drastic escalation of hostility in her work environment through, *inter alia*, taunting, pretextual complaints, threats of write-ups, threats of termination, efforts to baselessly lower her performance evaluations, changes to the terms and privileges of her employment, denial of employment opportunities, limiting and depriving Plaintiff of job meetings, assignments, training, and information that she needs to perform her job and that could lead to career advancement, sabotaging her work and duties, professional reputation, and performance, and other acts intended to negatively alter the terms, conditions, and privileges of her employment.

34. Since being labeled as a coward and engaging in protected activity, Plaintiff has become a pariah within the Department. On multiple occasions, Plaintiff has taken calls and dispatcher's requests for backup are met with silence, a serious concern for a law enforcement officer who can face grave danger in responding to any call.

35. This discrimination, harassment, and retaliation has been committed and condoned by employees of the Department and members of the Department's Command Staff, including but not limited to Chief Hernan Organvidez ("Chief Organvidez"), Deputy Chief Raul Ubieta

("Chief Ubieta"), Major Jose Seiglie ("Major Seiglie"), Sergeant Eric Fernandez ("Sgt. Fernandez"), and Sergeant Nilsa Mercado ("Sgt. Mercado").

**Chief Organvidez's Appointment**

36. At the time Chief Organvidez was appointed Chief of the Department, Plaintiff held various responsibilities and titles within the Department in addition to her job as a patrol officer, including serving as a Public Information Officer and a longtime "acting Sergeant."

37. An "acting Sergeant" fills the position of the regular supervisor when they are absent or when a squad does not have a supervisor for their shift. This position, which Plaintiff held for several years, comes with the responsibilities, prestige, and privileges of a higher rank, and a 5% pay increase for the times that an officer is working in the role.

38. Serving as a Public Information Officer also involves additional prestige, responsibilities, and privileges, as well as opportunity to earn increased pay through additional working hours and overtime, as Public Information Officers are tasked with going to various meetings and assisting with various programs.

39. Shortly after Chief Organvidez took over as Chief of the Department, Plaintiff was removed as a Public Information Officer without any notice or explanation and was informed by Sgt. Mercado that she was longer permitted to attend Public Information Officer meetings. Plaintiff was then replaced as Public Information Officer by a male, Officer Ray Valdez.

40. On the same date, Sgt. Mercado also informed Plaintiff that she was being removed from being an 'acting Sergeant', a position which Plaintiff had held continuously for many years. No explanation or notice was provided to Plaintiff with respect to her removal from this position either.

41. Around the same time, Sgt. Mercado was assigned as supervisor of Plaintiff's squad, and upon information and belief was acting at Chief Organvidez's direction and in concert with members of the Command Staff to further the discriminatory targeting of Plaintiff at all times material hereto.

42. It was later learned that around the same time, Sgt. Mercado spoke with a local resident that Department used to assist on calls, and specifically told the resident that she and Sgt. Fernandez had a "plan" to "get rid of" certain female officers for Chief Organvidez – even going so far as to specifically reference Plaintiff and another female officer, Yvette Gomez.

43. Unfortunately, in the years that have followed, Plaintiff has been subjected to escalating harassment, discrimination, retaliation, and humiliation in the male-dominated Department, and the discriminatory treatment and retaliatory animus towards Plaintiff persists as of the filing of this Complaint.

**<u>False Allegation of Cowardice</u>**

44. On May 18, 2018, an active shooter incident occurred at Trump National Doral ("TND"), whereby several law enforcement officers responded to the call, including Plaintiff.

45. Plaintiff arrived at the scene shortly before Sgt. Fernandez. Upon Sgt. Fernandez's arrival, it is known that he witnessed Plaintiff helping people to safety, guarding various areas, and even asked Plaintiff whether she was "okay" as Plaintiff helped patrons to evacuate the premises. Additionally, on scene was Lieutenant Catherine Jewett ("Lt. Jewett") who interacted with Plaintiff on scene for purposes of scene investigation.

46. Nonetheless, following the incident, Sgt. Fernandez claimed that he witnessed a City of Doral Police Officer (Plaintiff) commit an act of "cowardice" at Northwest 25th Street by taking a longer route to the scene rather than the shorter route to the scene. In law enforcement, the

offense of cowardice is considered career-threatening if not career-ending and is very difficult if not impossible to recover from professionally, perhaps one of worst offenses for a police officer.

47. On May 22, 2018, Sgt. Tellez wrote a memorandum to Sgt. Fernandez falsely stating that he had a conversation with Plaintiff regarding traffic cameras on Northwest 25th Street, whereby Sgt. Tellez falsely alleged that Plaintiff had asked Sgt. Tellez if knew whether there were any cameras on Northwest 25th Street, the same street where the reported act of cowardice took place.

48. In fact, the alleged conversation between Sgt. Tellez and Plaintiff never took place, as Plaintiff made clear during the internal affairs interview detailed below. Plaintiff never inquired about whether there were cameras. Indeed, at the time had been working with the Department for over ten (10) years and knew where every camera in the city was and thus there was no need for her to seek such information from Sgt. Tellez.

49. It should be noted that around the same time, Sgt. Tellez had been interviewing for a potential K-9 position with Major Seiglie and Sgt. Fernandez. After turning in the memorandum containing false statements intended to substantiate the allegation of cowardice against Plaintiff, Sgt. Tellez was offered the K-9 position that he had applied for. When he was unable to assume the K-9 position due to issues with the animal, Sgt. Tellez was promoted to the rank of Sergeant.

50. Sgt. Tellez and Sgt. Fernandez became very close after the incident, frequenting cigar bars together. It became evident that Sgt. Fernandez had recruited Sgt. Tellez to assist in manufacturing evidence for the baseless allegation of cowardice against Plaintiff.

51. On June 3, 2018, following the memorandum from Sgt. Tellez, Plaintiff was subjected to false allegations by Sgt. Fernandez when he wrote an unfounded memorandum to Major Seiglie regarding Plaintiff's response to the active shooter incident at TND, alleging, without any basis or proof thereof, that Plaintiff intentionally drove away from the active shooter scene.

52. On June 4, 2018, a complaint intake form was prepared by Captain Rafael Tapanes ("Captain Tapanes").

53. On June 6, 2018, Sgt. Fernandez filed his complaint against Plaintiff with the Doral Police Department via Complaint Form. The complaint referenced the memorandum written by Sgt. Fernandez to Major Seiglie alleging cowardice against Plaintiff even though Sgt. Fernandez was not aware of the identity of the driver that day. Rather, Sgt. Fernandez proceeded to assert without any proof that the driver was the Plaintiff.

54. In addition to the fact that Sgt. Fernandez and other supervising officers personally saw Plaintiff bravely performing her duties at the TND and knew Plaintiff had not committed an act of cowardice, Plaintiff was captured on video at the TND helping get patrons to safety and guarding sensitive areas during the active shooter incident, and most certainly did not commit an act of cowardice.

55. Although more serious and evidence-supported complaints involving male officers are generally downplayed and swept under the rug, following Sgt. Fernandez's unsubstantiated complaint alleging cowardice against Plaintiff, Plaintiff was subjected to immediate and intense hostility by the Department's Command Staff, as well as verbal malicious rumors, widespread maltreatment, and harassment from other officers in the Department including being labeled as a coward and subjected to other derogatory remarks, treatment, and scrutiny

that only continued to worsen thereafter and revealed that Plaintiff was not viewed and would not be treated in the same manner as a male officer in the Department.

### The Malicious and Unfounded "Investigation"

56. As a result of the unfounded complaint, Chief Organvidez directed Captain Tapanes to initiate an Internal Affairs investigation of Plaintiff. From this moment in time, Plaintiff became the subject of an unfounded and malicious internal investigation initiated by Major Seiglie and Chief Organvidez to harass, discriminate, humiliate, and irreparably harm Plaintiff professionally, designed to cause Plaintiff's termination or resignation from Department.

57. The unfounded internal investigation commenced, and on June 18, 2018, Captain Tapanes notified the Plaintiff that she had been identified as a subject of an Internal Investigation, Case Number 2018-03 (IA 2018-03) that was being conducted by the Department. The notice provided identified "cowardice" as the allegation against Plaintiff.

58. On June 21, 2018, Captain Tapanes ordered Plaintiff to report to the internal affairs office to give a "statement." Additionally, Captain Tapanes notified Plaintiff that she was a subject of the investigation, and thus had the right to have a representative present during the interrogation. The investigation would temporarily cease upon an EEOC Complaint later filed by the Plaintiff.

59. Around the same time, Captain Tapanes expressed to Chief Organvidez and Major Siegle that he believed the baseless investigation and targeting of Plaintiff should not proceed and could result in the Department getting sued.

60. Nevertheless, Chief Organvidez furthered his discriminatory efforts to harass and humiliate Plaintiff, going so far as to fire and eliminate Captain Tapanes' position and replace him with his own hand-picked Internal Affairs Investigator, Glenn Stolzenberg ("Stolzenberg").

Stolzenberg took over the internal investigation involving the Plaintiff and would act based on Major Seiglie and Chief Organvidez' orders.

**HR Complaint, EEOC Charge, and Escalation of Hostility**

61. On July 11, 2018, based upon the continued targeted harassment she was experiencing within the Department, including the constant hostile treatment from Department employees and being labeled as a "coward" and "that piece of shit" due to the false allegations and fabricated international investigation, Plaintiff was forced to file a Sexual Hostile Work Complaint with the City of Doral (the "HR Complaint"), which was received by Melissa Bandos in the Human Resources Department.

62. Plaintiff's HR Complaint immediately resulted in a drastic escalation of hostility towards Plaintiff by the Department and members of its Command Staff.

63. In the weeks following the filing of Plaintiff's HR Complaint, Plaintiff was subjected to retaliation by Major Seiglie and others that included marked escalation in the disdain for Plaintiff within the Department and unprecedented scrutiny of Plaintiff for trivial and pretextual issues including but not limited to, the way she wrote her work notes, wrote her emails, filled out her paperwork, wore her shoes, wore her uniform, or did her nails.

64. Plaintiff was given the "silent treatment" within the Department, with many officers refusing to speak with her because of the HR Complaint.

65. Meanwhile, Plaintiff's HR Complaint was disregarded, and no meaningful action was taken by the Department to address her HR Complaint or the hostile environment to which Plaintiff was forced to endure. Instead, it was allowed to continue.

66. On August 27, 2018, because Plaintiff never received any information regarding the HR Complaint that she filed on July 11, 2018, Plaintiff was forced to file a Charge of

Discrimination with the EEOC, which resulted in further retaliation against Plaintiff by the Department and its Command Staff.

67. Meanwhile, the Internal Affairs investigation the allegation of cowardice against Plaintiff escalated to a new level. In a concerted effort to substantiate the allegation against Plaintiff by any means necessary, Chief Organvidez directed Stolzenberg to revise the Department's Internal Affairs policies and changed the Internal Affairs investigator's role from decision-maker to fact finder, aiming to give more power to Stolzenberg in the Internal Affairs investigation of Plaintiff.

68. During the investigation, Major Seiglie also commanded officers such as Lieutenant Yohan Martinez ("Lt. Martinez") to "only" look at the cameras that focused on Plaintiff's vehicle.

69. Other officers indicated that they were approached by Sgt. Fernandez in the presence of other officers such as Officer Sweissberger and Officer Diaz asking them to say that the violating officer in the investigation was the Plaintiff.

70. Further, several pieces of evidence were excluded from the investigation and several officers lied under oath throughout the investigation when interviewed.

71. As the investigation proceeded and the scrutiny of Plaintiff intensified, Sgt. Tellez formed group chats with other officers in the Department in relation to Plaintiff and the investigation, whereby Sgt. Tellez referred to Plaintiff as "that piece of shit", "coward", and even took pleasure in the effects of the hostile environment on Plaintiff, stating "she looks like shit, the stress is getting to her."

**Escalation of Cowardice Investigation and Efforts to Incriminate Plaintiff**

72. In September 2018, just weeks after Plaintiff filed her Charge of Discrimination with the EEOC, Chief Organvidez directed Stolzenberg to take an even "harder" look at the investigation against the Plaintiff.

73. However, after reviewing the evidence, Stolzenberg informed Chief Organvidez that there was insufficient evidence to substantiate a finding that the Plaintiff was the officer observed driving away from the incident. The driver seen driving away from the incident was designated as "an unknown police officer."

74. Nevertheless, between August 23, 2018 and October 17, 2018, Plaintiff was informed by Stolzenberg on three separate occasions that she was the subject of the Internal Affairs investigation.

75. October 17, 2018, Plaintiff was suddenly notified by Stolzenberg that she was no longer the subject of the investigation, but rather was merely a "witness" officer. Despite this representation, Plaintiff was still in actuality the subject of the City's investigation into the cowardice allegation.

76. Plaintiff was then asked to come for an interview without a legal representative as she was "merely" a "witness" officer. However, Plaintiff stated to Stolzenberg she did feel comfortable participating in the interview without her legal representative.

77. It was at this point that Plaintiff was victim to threats of termination by Stolzenberg, who told Plaintiff that if she did not participate in the interview, then her command would cease, and she would be relieved from duty. As a result of such threats, Plaintiff attended the interview without representation.

78. Prior to beginning the interview, Plaintiff asked who the subject of the interview was, and Stolzenberg responded "We don't know. We're here to find out."

79. It quickly became clear that the interview with Stolzenberg at the Internal Affairs office was part of the continuing discriminatory scheme to harass and terminate Plaintiff, and that Plaintiff was being set up and forced into an interview without representation in the hope that Stolzenberg could elicit statements from Plaintiff that the Department could use to substantiate the allegation of cowardice against her.

80. Throughout the entirety of the investigation, the baseless investigation was overseen and conducted only by males within the Department, even following Plaintiff's HR Complaint of a sexually hostile work environment.

81. Throughout the entirety of the investigation, several employees of the Department including members of the Command Staff, including but not limited to Chief Organvidez, Major Siegle, and Sgt. Fernandez, were aware that investigation was fabricated in order to purposefully harass and target Plaintiff, going as so far as to manufacture false allegations against Plaintiff, violate her rights to having a representative present, attempting to elicit statements to falsely incriminate her, all in a discriminatory and retaliatory effort to irreparably harm Plaintiff's professional reputation and cause her termination or resignation from the Department.

82. Ultimately, despite the best efforts of those behind the investigation, the Department could not substantiate its efforts to incriminate Plaintiff, and the unfounded investigation was recharacterized from Internal Affairs investigation to general investigation because no subject officer could be identified.

**Plaintiff's PERC Charge and Finding of Departmental Impropriety**

83. On February 25, 2019, Plaintiff filed an amended unfair labor practice charge with the Public Employees Relations Commission ("PERC") based on improprieties in the Internal Affairs investigation.

84. On July 17, 2019, after reviewing all evidence relating to Plaintiff's PERC charge and the Internal Affairs investigation of Plaintiff, a hearing officer concluded that the City violated Florida Statutes by refusing Plaintiff's request for representation "during an employee interview that could reasonably be perceived by the employee as potentially leading to disciplinary action and by threatening to discipline her if she refused to participate in the interview."

85. On August 23, 2019, PERC sustained Plaintiff's charge, finding that the hearing officer's findings of fact were supported by competent evidence received in a proceeding that satisfied the essential requirements of law. Even though the Department was ordered by PERC to post the results internally at the station, the order was disregarded, and the results were never posted.

**Discrimination, Retaliation, and a Hostile Work Environment**

86. No similarly situated male officers have faced scrutiny similar to that which Plaintiff has faced within the Department, nor treated in a manner like Plaintiff, and no other similarly situated male officer has been subjected to a fabricated investigation that contained no evidence to support the allegation, and in fact where the only evidence that existed indicated that Plaintiff committed no wrongful acts.

87. Since the beginning of Chief Organvidez's tenure Plaintiff has been the victim of several other instances of harassment and disparate treatment to which no similarly situated male employees have been subjected, including baseless reprimands for contrived issues such as her response time to calls, clocking in at the courthouse, the manner in which she filled out her DUI worksheets, and how she wore her uniform.

88. These instances of harassment and scrutiny have further escalated and worsened each time Plaintiff has engaged in activity protected under Title VII and the FCRA, including after

Plaintiff's filing of an HR Complaint, EEOC Charge of Discrimination, and her filing of the instant lawsuit.

89. With Chief Organvidez's tenure came an atmosphere of permissiveness towards harassment of certain females within the Department. For example, Plaintiff was regularly subjected to ridicule by male command staff for her appearance, and regularly experienced comments from Chief Organvidez and Chief Ubieta such as "here she comes with her eyelashes!", while no similarly situated male employees were subjected to such comments about their appearance.

90. When Plaintiff inquired as to why she was being subjected to such treatment within the Department, she was told that she was persecuted and harassed because she was an "easy target" and Chief Organvidez and Chief Ubieta viewed her as an "airhead."

91. In early 2018, shortly after Chief Organvidez was appointed, Plaintiff was targeted and harassed in relation to her DUI worksheets, whereby Major Seiglie sought to discipline Plaintiff due to the way she prepared her DUI worksheets for "including more witness officers then necessary", even though Plaintiff was previously directed to include all witnesses on scene.

92. Plaintiff, who issues the highest number of DUI's in the Department, never had any previous issues adding more than two witnesses into the worksheets when giving DUIs. As a matter of fact, Plaintiff checked in with the States Attorney's Office ("SAO") to confirm she was allowed to do what she normally did and it was confirmed she was indeed allowed to do so by the SAO.

93. However, after Chief Organvidez took over in 2018, Plaintiff was suddenly told she was not supposed to complete her worksheets in this manner, and all of her DUIs were audited, another method of targeting and scrutinizing Plaintiff's work in an effort to set up Plaintiff so she may be terminated due to the animosity against Plaintiff arising out of her sex/gender and failure to

submit to the "good old boys" male-dominated culture of the Department. No other officer was subjected to an audit of their DUIs or similar scrutiny of their worksheets.

94. In the instance of the reprimand Plaintiff received regarding her response time to a hit and run police call, Plaintiff and Officer Desius both responded to the call under Sergeant Cengel's supervision. The caller complained about the amount of time it took for the officers to arrive on scene. Sergeant Cengel submitted a memorandum to Major Seiglie and Lt. Jewett addressing the cause for delay, however, Major Seiglie urged for Sergeant Cengel to find that Plaintiff was somehow culpable even though Sergeant Cengel knew the problem was due to a CAD problem, and not any deficiency on Plaintiff's part.

95. After Sergeant Cengel denied this request to falsely find Plaintiff culpable due to her honesty and integrity, Major Seiglie assigned the investigation to Lt. Jewett, somebody he believed would do as he wished, sending multiple emails with statements such as "this evening can you follow up on the following: recommended discipline on the Bardelas hit and run call 'both' Officer and Supervisor. Thank you."

96. Meanwhile, Major Seiglie knew such discipline was unfounded, as the citizen who called regarding the delays actually expressed that she wanted to complain about the dispatchers being rude but specifically wanted to commend Plaintiff for going "above and beyond" to assist her daughter during her time of need. Indeed, a wrong address was provided and the only reason that officers were able to respond was because Plaintiff got on phone with the daughter and determined her location based on a description of her surroundings.

97. Even though Plaintiff received some sort of protection from being baselessly reprimanded in this instance due to the honesty and integrity of her immediate supervisor Sgt. Cengal, Major

Seiglie still threatened to discipline Plaintiff's supervisor for failure to discipline Plaintiff as he directed, as well as lowering the initial evaluations issued by Plaintiff's supervisor.

98. Officer Desuis, a similarly situated male officer who was on duty and responded to the hit and run call with Plaintiff, was never reprimanded, while Plaintiff was subjected to the treatment set forth above.

99. Around the same time, Officer Romo, a similarly male officer received a complaint regarding his being discourteous to a citizen, and although the same individual was assigned to investigate the complaint, the Department's Command Staff treated the complaint wholly differently, telling the investigator "not to make it a murder case."

100. On another specific occasion, Plaintiff was baselessly scrutinized for clocking in via her laptop while she was at the courthouse, even though Major Seiglie had previously approved doing so, and other similarly situated officers who did the same were not questioned. Plaintiff was only able to escape being reprimanded for this after she produced a prior memorandum from Major Sieglie stating that officers were indeed permitted to clock in in this manner.

101. Even though Plaintiff has seniority over many other Officers, having been with the Department for over 10 years, Plaintiff has been excluded from opportunities to work overtime and earn additional compensation while other officers with less seniority are giving such opportunities.

102. The denial of Plaintiff's opportunity to work overtime alters the terms, conditions, and privileges of Plaintiff's employment, including her pay, in furtherance the campaign to discriminate, harass, and retaliate against her.

103. Although Plaintiff has sent several emails up the chain of command expressing her desire to for opportunities to work overtime and inquiring why she is being excluded while junior

officers are given such opportunities, the inquiries have been ignored and nothing has been done to correct the issue.

104. On several occasions, Plaintiff has been specifically targeted by Sgt. Mercado who ensured that Plaintiff's commendations were withheld for long periods of time.

105. Further, Sgt. Mercado would often fail to turn in Plaintiff's paperwork or would hold Plaintiff's paperwork for weeks at a time so as to make Plaintiff appear unprofessional and neglectful of her duties.

106. When Sgt. Fernandez filed his complaint alleging cowardice against Plaintiff, attached was a manifesto several pages long alleging that Plaintiff was always turning in her work late and otherwise defaming Plaintiff's work; however, upon Plaintiff showing emails and other proof that she was not, the issue was dropped, and the manifesto mysteriously disappeared.

107. Other instances of harassment, discrimination, and retaliation occurred following Plaintiff's engaging in protected activity, including members of the Department's Command Staff intentionally targeting and diminishing Plaintiff's work evaluations, lowering her evaluations even though her supervisor issued a higher score, intentionally seeking to contrive flaws in Plaintiff's work, and making higher number of negative comments compared to other similarly situated officer's evaluations.

108. For example, in or about April of 2020, Chief Ubieta requested a meeting with Plaintiff's supervisor specifically to ensure that Plaintiff's evaluation was lowered. Even though a thorough memorandum was issued by Plaintiff's supervisor to justify Plaintiff's exceptional evaluation, Chief Ubieta told Plaintiff's Supervisor that he would not accept the evaluation as written and directed him to lower it from 'exceptional' to 'above satisfactory.' The

memorandum that Plaintiff's Supervisor had written to support the original 'exceptional' evaluation was then shredded.

109.    Major Seiglie has indicated to other officers that he wanted Plaintiff to be written up for any reason, and has held meetings with other members of the Department's Command Staff in order to further a discriminatory campaign to harass, retaliate against, humiliate, and professionally harm Plaintiff.

110.    Further, following Plaintiff's engaging in protected activity, Major Seiglie constantly scrutinized Plaintiff's work and asked employees such as Ailin Morales, the DUI/Records Liaison, for Plaintiff's paperwork in order to find issues to use against Plaintiff. Ailin Morales has also indicated that Major Seiglie only watched Plaintiff's vehicle when car trackers were installed. All of this was done in order to further lower Plaintiff's evaluations and ridicule Plaintiff for the purpose of harming and altering the terms, conditions, and privileges of Plaintiff's employment in a continuing campaign to harass, discriminate, and retaliate against Plaintiff.

111.    As another example, although handwritten citations are typically put into the system and sent to court, in November 2018 Plaintiff found her Department inbox filled with ten citations that had been outstanding for three months. When she inquired as to why they were in her mailbox rather than having been entered into the system, nobody gave her a response as to why this occurred. Again, it was evident that persons in the Department were trying to set Plaintiff up to be reprimanded.

112.    Further, Sgt. Mercado falsely informed Major Seiglie that Plaintiff's worksheets were often tardy, incorrect, and incomplete, when in fact, Sgt. Mercado consistently held onto or

"misplaced" Plaintiff's paperwork for two weeks at a time so that Plaintiff would be reprimanded for tardiness.

113.    On several occasions, Plaintiff has been singled out and accused of violating the dress code policy even though other similarly situated males are never reprimanded for doing so.

114.    At the direction of the Command Staff, Lt. Jewett has reprimanded Plaintiff for having her nails "too shiny". Further, male officers wear jeans to court and other unapproved clothing but are not reprimanded. Plaintiff has consistently been reprimanded for not wearing the correct boots even though the retail store does not hold her size. As such, and as witnessed by other officers, Plaintiff had to go out of her way to purchase costlier boots in order to wear them for work, yet she was still reprimanded for violation of the dress code policy.

115.    On another occasion, after the sleeve of Plaintiff's uniform was ripped during an incident with a subject such that a small tattoo on her wrist was exposed, Plaintiff was reprimanded for violating the Department's policy against visible tattoos. Other similarly situated officers with tattoos have not been similarly reprimanded and in fact are provided band-aids by the Department's Command Staff to assist in covering their tattoos if needed.

116.    In 2020, Sgt. Mulet designated Plaintiff to become a "Homeless Liaison" for the Department and advised the Administration via email. Plaintiff was then contacted by the Unit Head and advised that the email was received and that she would be receiving briefings to become oriented with the position the following week. Thereafter, Plaintiff was never contacted and was removed from becoming a Homeless Liaison without notice or explanation. Plaintiff was later told that a member of the Command Staff directed her removal and provided no reason.

117.    The position of Homeless Liaison comes with recognition, opportunities to work overtime, and is a positive addition to an officer's personnel file that reflects well on the officer and their career. In denying Plaintiff this opportunity, the Department purposefully altered Plaintiff's pay, prestige, and responsibility.

118.    Following the filing of the instant lawsuit, Plaintiff's mandatory training required by the FDLE, which Plaintiff completed, disappeared despite the fact that it was sent to Major Sieglie's unit both electronically and via inter-office delivery by a Sergeant along with Plaintiff's certificates. Major Sieglie oversees the unit, and not coincidentally, Plaintiff has been obstructed from getting approved training or getting certificates entered to reflect the credit, while other officers have not experienced such issues.

119.    Similarly situated male employees such as Officer Chris Fabregas, Sgt. Tellez, Sgt. Fernandez, Officer Romo, Officer Desuis, and Detective Delgado are consistently treated more favorably than Plaintiff, never having been similarly targeted or subjected to reprimands in a manner similar to Plaintiff, even when committing bona fide and serious infractions of Department policy.

120.    As an example, Officer Fabregas was caught in a fight at the Hard Rock Hotel and Casino, yet Major Seiglie took him home in his car to sleep and he was never reprimanded.

121.    In another instance, Sgt. Fernandez left his gun at the bathroom in the courthouse, yet he was never reprimanded for this dangerous activity.

122.    In July 2019, Sgt. Fernandez shot himself during an unauthorized training, yet it was covered up and he was never reprimanded. Instead, Sgt. Fernandez was promoted to an administrator position next to the Chief.

123.    In November 2019, Detective Delgado was involved in a hit and run accident while off duty with a Department vehicle and was never given a DUI examination/test, which is procedure. Sgt. Mercado's several policy violations were overlooked regarding Detective Delgado's case, allowing Detective Delgado to go back to work without being reprimanded.

124.    Cases against similarly situated male officers such as Officer Romo were often closed quickly compared to Plaintiff's cases because the Department was not "after blood" towards Officer Romo like they were against Plaintiff.

125.    As noted above, a similarly situated male Officer Desuis, who was on duty and responded to the hit and run call with Plaintiff, was never reprimanded in relation to the delayed response, while Plaintiff was.

## Further Retaliation and Efforts to Create Chilling Effect

126.    Plaintiff has been consistently discriminated against and has been retaliated against and subjected to escalated hostility within the Department after she engaged in protected activities that included her filing of a Sexual Hostile Work Complaint and then an EEOC Complaint, as well as her filing of the instant lawsuit, through taunting, targeted harassment, and adverse employment actions, including but not limited to statements from Major Seiglie and other members of the Department's Command Staff, exclusion from opportunities to work overtime, exclusion from opportunities for advancement, exclusion from consideration for other positions, as well as the aforementioned efforts to baselessly reprimand Plaintiff, which have all resulted in altering the terms, conditions, and privileges of her employment.

127.    After Plaintiff filed her EEOC Complaint, members of the Department Command Staff questioned Plaintiff and made hostile statements regarding the EEOC Complaint, stating "if

you don't have facts, you have nothing!" and "they asked us questions but we denied everything", so as to criticize and trivialize Plaintiff's EEOC Complaint.

128.    Further, members of the Department's Command Staff disparaged and made efforts to intimidate Plaintiff, as well as her female supervisor, Sergeant Cengel, stating that "their careers are done" because both filed Charges with the EEOC, further evidencing the retaliatory animus against Plaintiff and discriminatory attitude towards females who speak up in the Department.

129.    On another instance, a Department employee overheard Captain Fernandez telling a Department employee Orlando Sanchez that the individuals filing EEOC Complaints need to be put "in a raft together and shipped back to their fucking countries." Orlando Sanchez later reprimanded the witness employee for "sharing what he had heard."

130.    On another occasion, an undisclosed officer indicated that while in the City of Doral's Motor Unit, he overheard Chief Organvidez tell another member of the Department that he "wiped his ass with the EEOC Complaints."

131.    Moreover, Plaintiff's filing of the instant lawsuit led to further and increased harassment of Plaintiff by members of the Department. Shortly after Plaintiff filed her original Complaint in this matter, Sgt. Tellez changed Plaintiff's acting supervisor to someone in his "circle" and began scrutinizing Plaintiff's workplace activities even more closely, including specifically tracking Plaintiff's vehicle and heightening scrutinization of Plaintiff's paperwork in a manner that is not done to other officers.

132.    Although Plaintiff notified Human Resources of the retaliatory treatment, Plaintiff was told that they "can't do much" because of the action that Plaintiff filed against the City.

133. In or about September of 2020, after Plaintiff and several other officers were involved in a hotel crime initiative. Every officer involved in the operation received a commendation from the Department based upon their involvement in the operation except for Plaintiff, who was omitted from the commendation.

134. The Department has also intentionally prevented Plaintiff from receiving commendations and other items that would reflect positively on Plaintiff's employment performance, going so far as to remove items from Plaintiff's file.

135. For example, in late-2020 a Georgia resident called the Department and wrote a letter thanking Plaintiff for assisting her in helping Plaintiff's homeless brother. Although this would typically result in an officer receiving a commendation, a commendation was not allowed to be written and the citizen's letter mysteriously disappeared from Plaintiff's file.

136. In December 2020, Plaintiff responded to the scene of a severe auto accident with injuries and the driver suffering a possible stroke. Plaintiff was one of the first officers to respond on scene and assist, and the driver was transported to the hospital where he survived. On January 11, 2021, the other officers who responded to the scene – all males other than Plaintiff – received a commendation for their assistance and efforts in saving a person's life, yet Plaintiff was again omitted from this commendation without explanation, and despite her supervisors seeing her at the scene.

137. The aforementioned conduct violated the City of Doral's own Municipal Charter, and has adversely affected Plaintiff's status as an employee.

138. Specifically, Doral, by and through its employees, agents, servants, and the Department, violated the Citizen's Bill of Rights (A)(2).

139.    Doral violated the above Section when the employees and agents in the Department, such as Chief Hernan Organvidez, Major Jose Seiglie, Sergeant Eric Fernandez, and Sergeant Nilsa Mercado discriminated, harassed, humiliated, punished, disciplined, and retaliated against female police officers, including Plaintiff, who work and have worked as a law enforcement officers within the Department.

140.    As of the filing of this Complaint, Plaintiff remains employed with the Department and continues to be subjected to discriminatory treatment and retaliation in violation of law.

141.    Plaintiff has retained the undersigned attorneys to represent her in this action and is obligated to pay reasonable attorneys' fees and costs.

## COUNT I – SEX DISCRIMINATION – DISPARATE TREATMENT
### Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000
#### *Against City of Doral*

Plaintiff repeats and realleges the allegations set forth in paragraphs 6, 20-22, 24-26, 31-32, 35-61, 67-71, 73-103, 106, 109, 113, 114, 119-125, 126, 128, and 133-141, as if fully set forth herein.

142.    Plaintiff is a woman and is an "individual" and "employee" under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq*.

143.    Defendant is a "person" and an "employer" of Plaintiff under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq*.

144.    Title VII of the Civil Rights Act of 1964 states, *inter alia*, that "[i]t shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin…". *See* 42 U.S.C. §2000e et seq.

145.    At all times mentioned in this cause of action, all provisions of Title VII were in full force and effect and were binding on Defendant.

146.    Plaintiff was qualified for her position, as she has received countless positive performance evaluations, commendations, and has been employed by as an officer with Defendant's Police Department for twelve (12) years.

147.    Nevertheless, Plaintiff was subjected to discriminatory disparate treatment on the basis of her sex in violation of Title VII.

148.    The acts of harassment and discrimination described herein occurred because of Plaintiff's membership in a protected class as a woman.

149.    On the basis of her sex, Plaintiff was treated differently than males who were similarly situated to Plaintiff in all material respects.

150.    Defendant, through the conduct of its agents, servants, and/or employees, discriminated against Plaintiff and subjected Plaintiff to adverse employment actions on the basis of her gender.

151.    Defendant has no legitimate non-discriminatory reason for its conduct and any such reason is pretext for discrimination.

152.    Plaintiff was subjected to disparate treatment, harassment, and adverse employment actions on the basis of her sex in violation of Title VII. Submission to the conduct was made an implicit part of Plaintiff's employment with Defendant.

153.    Defendant's sex-based discrimination against Plaintiff included, but was not limited to, the following:

    a.    Subjecting Plaintiff to demotions in responsibilities, titles, and prestige without any basis, including removing Plaintiff from her longtime role of acting Sergeant and

removing Plaintiff from her position as Public Information Officer and replacing her with a male.

b.  Scrutinizing Plaintiff's work more closely than that of other similarly situated male employees, without justification.

c.  Subjecting Plaintiff to false allegations, unwarranted discipline, intentional damage to her professional reputation.

d.  Excluding Plaintiff from job assignments and opportunities that were provided to similarly situated male officers, including excluding Plaintiff from opportunities to work overtime and earn additional pay and preventing Plaintiff from being appointed to a Homeless Liaison Officer without any justification.

e.  Subjecting Plaintiff to disparate application of work rules and policies, including reprimands and discipline for trivial or contrived acts that similarly situated male officers were not reprimanded or disciplined for.

f.  Subjecting Plaintiff to unfounded investigations and investigative tactics designed to harass, humiliate, and harm Plaintiff professionally.

g.  Intentional diminishment of Plaintiff's work evaluations without justification.

h.  Subjecting Plaintiff to derogatory comments and insults, including labeling Plaintiff as a coward.

i.  Subjecting Plaintiff to regular comments and heightened scrutiny regarding her appearance and uniform.

j.  Subjecting Plaintiff to frequent and continuous harassment and allowing such harassment to continue without impediment.

k.  Failing to investigate or take any corrective action in response to Plaintiff's complaints of discrimination.

l.  Omitting Plaintiff from commendations that were awarded to similarly situated male officers for the same events and actions.

m.  Withholding and removing positive information from Plaintiff's personnel file.

n.  Other acts, as set forth herein, which altered the terms, conditions, and privileges of Plaintiff's employment.

154.  Similarly situated male employees, such as such as Officer Chris Fabregas, Sgt. Tellez, Sgt. Fernandez, Officer Romo, Officer Desuis, and Detective Delgado were treated more favorably than Plaintiff, as set forth herein. The foregoing male individuals are or have been similar to Plaintiff in all material respects, including rank, experience level, and assigned duties.

155.  The foregoing acts of sex discrimination violated Plaintiff's right to be free from sex discrimination under Title VII.

156.  Defendant knew or should have known of the acts of sex discrimination described hereinabove and failed to take prompt corrective action to remedy the harassment, and at all times relevant to this action, the employees, agents, and elected officials of Doral were in the control of the Department, and the Department officers and employees referred to hereinabove were employees and/or agents of Doral and were acting in the course and the scope of their authority.

157.  As a direct and proximate result of Defendant's unlawful discriminatory conduct, as set forth above, Plaintiff has suffered and continues to incur damages, including but not limited to medical expenses, loss of compensation, wages, benefits, opportunities for employment and advancement, loss of professional reputation and work experience, all to her detriment, in an amount to be shown according to proof.

158.    As a further direct and proximate result of Defendant's acts as alleged herein, Plaintiff has suffered and continues to suffer physical personal injuries, embarrassment, humiliation, mental anguish and other general damages, all to her detriment, in an amount to be shown according to proof.

159.    These injuries and losses are continuing and Plaintiff will continue to suffer such injuries in the future.

160.    As a result of Defendant's unlawful conduct, as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of said suit as provided by 2000(e)(5)(g).

WHEREFORE, Plaintiff demands judgment against Defendant, a trial by jury on all issues so triable and any other relief this Court deems just and proper.

## COUNT II – SEX-BASED HOSTILE WORK ENVIRONMENT
### Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000
#### *Against City of Doral*

Plaintiff repeats and realleges the allegations set forth in paragraphs 6, 20-22, 24-26, 31-32, 35-61, 67-71, 73-103, 106, 109, 113, 114, 119-125, 126, 128, and 133-141, as if fully set forth herein.

161.    By the above alleged acts, Defendant has violated Title VII's guarantee of the right to work in an environment free from intimidation, ridicule, and insult.

162.    During Plaintiff's employment and continuing to the present day, the Department has maintained a hostile working environment contaminated by a pattern of offensive conduct, including harassment and discrimination directed at women, and in particular, Plaintiff. Such conduct has been severe, pervasive, and ongoing since at least early 2018.

163.     Defendant, through the conduct of its agents, servants, and/or employees, has subjected Plaintiff to unwelcome harassment and a hostile and abusive work environment based on her membership in a protected class as a woman.

164.     At all times material hereto, Plaintiff has been qualified for her job as evidenced by her continuous employment by the Department as a law enforcement officer for over twelve (12) years.

165.     Nevertheless, Plaintiff has been subjected to multiple non-discrete adverse employment actions, including continuous discrimination and harassment condoned and engaged in by employees of the Department and the Department's Command Staff.

166.     Plaintiff was and remains subjectively offended by the abusive, intimidating, hostile, and gender-offensive work environment in which she worked and continues to work and a reasonable person would find Plaintiff's work environment abusive, intimidating, hostile, and offensive based on the frequency of the discriminatory conduct, its severity, and because it unreasonably interfered with Plaintiff's work performance.

167.     Defendant's harassment of Plaintiff violated Title VII by subjecting Plaintiff to a hostile work environment which had the purpose or effect of altering the terms and conditions of Plaintiff's employment.

168.     Defendant is vicariously liable for all tangible job detriments suffered by Plaintiff and all gender harassment engaged in by the supervisory personnel of Defendant's Police Department, who were empowered by Defendant to take tangible employment actions against Plaintiff.

169.     Defendant is also indirectly liable for all gender harassment against Plaintiff because it knew or should have known of the gender harassment and failed to take prompt remedial action which was reasonably calculated to end the harassment.

170. Defendant is also directly liable, as at all times material hereto, Defendant's agents were acting within the course and scope of their employment with Defendant. Plaintiff was harassed based on her gender and by her supervisors and her coworkers who were acting at the direction of Plaintiff's supervisors.

171. Defendant's actions creating and maintaining a hostile work environment included, but were not limited to, the following:

   a. Subjecting Plaintiff to demotions in responsibilities, titles, and prestige without any basis, including removing Plaintiff from her longtime role of acting Sergeant and removing Plaintiff from her position as Public Information Officer and replacing her with a male.

   b. Scrutinizing Plaintiff's work more closely than that of other similarly situated male employees, without justification.

   c. Subjecting Plaintiff to false allegations, unwarranted discipline, intentional damage to her professional reputation.

   d. Excluding Plaintiff from job assignments and opportunities that were provided to similarly situated male officers, including excluding Plaintiff from opportunities to work overtime and earn additional pay and preventing Plaintiff from being appointed to a Homeless Liaison Officer without any justification.

   e. Subjecting Plaintiff to disparate application of work rules and policies, including reprimands and discipline for trivial or contrived acts that similarly situated male officers were not reprimanded or disciplined for.

   f. Subjecting Plaintiff to unfounded investigations and investigative tactics designed to harass, humiliate, and harm Plaintiff professionally.

33

g.  Intentional diminishment of Plaintiff's work evaluations without justification.

h.  Subjecting Plaintiff to derogatory comments and insults, including labeling Plaintiff as a coward.

i.  Subjecting Plaintiff to regular comments and heightened scrutiny regarding her appearance and uniform.

j.  Subjecting Plaintiff to frequent and continuous harassment and allowing such harassment to continue without impediment.

k.  Failing to investigate or take any corrective action in response to Plaintiff's complaints of discrimination.

l.  Omitting Plaintiff from commendations that were awarded to similarly situated male officers for the same events and actions.

m.  Withholding and removing positive information from Plaintiff's personnel file.

n.  Other acts, as set forth herein, which altered the terms, conditions, and privileges of Plaintiff's employment.

172.  Similarly situated male employees, such as such as Officer Chris Fabregas, Sgt. Tellez, Sgt. Fernandez, Officer Romo, Officer Desuis, and Detective Delgado were treated more favorably than Plaintiff, as set forth in previous examples. The foregoing male individuals are or have been similar to Plaintiff in all relevant respects, including rank, experience level, and assigned duties.

173.  The acts of sex discrimination described hereinabove constituted adverse employment actions and were sufficiently severe and pervasive so as to create an intolerable hostile working environment, affecting the terms and conditions of the Plaintiff's employment.

174.  The Department's Command Staff, including but not limited to Chief Organvidez, Major Seiglie, Sgt. Fernandez, and Sgt. Mercado, were aware and have condoned and participated in

creating the hostile work environment described hereinabove and failed to take corrective action to remedy the acts and conduct.

175.    Defendant knew or should have known of the acts of sex discrimination, harassment, and retaliation that formed this hostile work environment described hereinabove and failed to take prompt corrective action to remedy the harassment, and at all times relevant to this action, the employees, agents, and elected officials of Defendant were in the control of the Department, and the Department officers and employees referred to hereinabove were employees and/or agents of Defendant and were acting in the course and the scope of their authority.

176.    Defendant took no steps to stop the harassment of Plaintiff.

177.    The harassment was severe or pervasive enough to change the conditions of Plaintiff's employment and create an abusive environment, judged by both an objective standard and a subjective standard.

178.    Plaintiff took advantage of all preventative or corrective opportunities as provided by the Defendant and did everything possible to avoid the harm.

179.    Plaintiff has been damaged because of said hostile work environment.

180.    As a direct and proximate result of Defendant's unlawful discriminatory conduct, as set forth above, Plaintiff has suffered and continues to suffer losses incurred in earnings, earning capacity, and other employment benefits, all to her detriment, in an amount to be shown according to proof.

181.    As a further direct and proximate result of Defendant's acts as alleged herein, Plaintiff has suffered and continues to suffer physical personal injuries, embarrassment, humiliation, mental anguish and other general damages, all to her detriment, in an amount to be shown according to proof.

182.     These injuries and losses are continuing and Plaintiff will continue to suffer such injuries in the future.

183.     Defendant committed the acts alleged herein despicably, maliciously, fraudulently and/or oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice and in willful and conscious disregard of Plaintiff's rights.

184.     Moreover, as a result of Defendant's unlawful conduct, as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of said suit as provided by 2000(e)(5)(g).

WHEREFORE, Plaintiff demands judgment against Defendant, a trial by jury on all issues so triable and any other relief this Court deems just and proper.

## COUNT III – RETALIATION
### Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000
### *Against City of Doral*

Plaintiff repeats and realleges the allegations set forth in paragraphs 6, 20-21, 23-24, 26, 31, 33-35, 61-85, 88, 101-105, 107-112, 114-118, and 126-141, as if fully set forth herein.

185.     Title VII prohibits retaliation against an employee for opposing conduct which would violate the terms of Title VII.

186.     At all times mentioned in this cause of action, Plaintiff was an employee of Defendant as defined by 42 U.S.C. 2000e (f), and Defendant was an Employer as defined by 42 U.S.C. 2000e (b).

187.     At all times mentioned in this cause of action, all provisions of Title VII were in full force and effect and were binding on Defendant.

188.     Plaintiff opposed discriminatory conduct by Defendant which is prohibited by Title VII when she complained to Defendant about the sex discrimination and hostile work environment that she was subjected to as described and set forth above.

189.     On multiple occasions, Plaintiff complained about Defendant's unlawful employment practices, and otherwise engaged in statutorily protected activity. Examples of such complaints and statutorily protected activity include, but are not limited to the following:

  a.  Filing a Sexually Hostile Work Environment Complaint with Defendant's Human Resources Department in July of 2018.

  b.  Filing a Charge of Discrimination with the Equal Employment Opportunity Commission in August of 2018 alleging sex discrimination and retaliation.

  c.  Filing the instant lawsuit in November of 2020 alleging sex discrimination and retaliation.

190.     Plaintiff has been retaliated against and continues to be retaliated against because of her protected activity in complaining about and opposing Defendant's unlawful practices.

191.     The retaliatory conduct taken against Plaintiff by Defendant has included, but has not been limited to, the following adverse employment actions:

  a.  Excluding Plaintiff from opportunities to work overtime and earn additional compensation without any basis.

  b.  Subjecting Plaintiff's work to heightened scrutiny.

  c.  Subjecting Plaintiff to contrived infractions and unfounded reprimands.

  d.  Targeted monitoring and tracking of Plaintiff and Plaintiff's vehicle in an effort to find grounds to discipline or terminate Plaintiff.

  e.  Directives from the Command Staff to lower Plaintiff's performance evaluations without any basis.

f. Preventing Plaintiff from taking assignments that would increase her responsibilities, opportunities for increased pay, and/or prestige, including but not limited to preventing Plaintiff was inexplicably from becoming a Homeless Liaison.

g. Condoning and facilitating baseless investigations and discipline of Plaintiff.

h. Escalated efforts to investigate, discipline, and reprimand Plaintiff.

i. Sabotage of Plaintiff's work and efforts to conduct her job duties.

j. Omitting Plaintiff from deserved commendations.

k. Atypical and baseless scrutinization of Plaintiff's everyday tasks.

l. Obstructing and denying Plaintiff's efforts to seek opportunities for additional training and professional certifications.

m. Refusing to address Plaintiff's complaints or take any corrective action to prevent and/or eradicate retaliatory and discriminatory acts against Plaintiff.

n. Subjecting Plaintiff to frequent and continuous harassment and allowing such harassment to continue without impediment.

o. Omitting Plaintiff from commendations awarded to other similarly situated officers for the same events and acts.

p. Withholding and removing positive information from Plaintiff's personnel file.

q. Other acts, as set forth herein, which have altered the terms, conditions, and privileges of Plaintiff's employment and reduced Plaintiff's pay, prestige, and responsibilities.

192. As a result of Plaintiff's complaints of gender-based harassment and gender discrimination, Defendant, through its agents, servants and/or employees retaliated against Plaintiff for participating in actions protected under Title VII.

193.    The retaliatory actions against Plaintiff have been taken by Defendant's supervisors and other agents while acting in the course, scope, and in furtherance of their agency and employment relationship with Defendant.

194.    The above retaliatory acts were known to, condoned, and furthered by decision-makers within the Defendant's Police Department, including Chief Organvidez, Major Sieglie, Chief Ubieta, and others.

195.    Defendant failed to take all reasonable and necessary steps to prevent and/or eradicate the retaliatory acts, including but not limited to failing to adequately investigate Plaintiff's numerous complaints.

196.    By retaliating against Plaintiff for complaining about unlawful harassment and discrimination, Defendant violated Plaintiff's rights under Title VII.

197.    As a direct and proximate result of Defendant's unlawful retaliatory conduct, as set forth above, Plaintiff has suffered and continues to incur damages, including but not limited to medical expenses, loss of compensation, wages, benefits, opportunities for employment and advancement, loss of professional reputation and work experience, all to her detriment, in an amount to be shown according to proof.

198.    As a further direct and proximate result of Defendant's acts as alleged herein, Plaintiff has suffered and continues to suffer physical personal injuries, embarrassment, humiliation, mental anguish and other general damages, all to her detriment, in an amount to be shown according to proof.

199.    These injuries and losses are continuing and Plaintiff will continue to suffer such injuries in the future.

200.    Defendant committed the acts alleged herein despicably, maliciously, fraudulently and/or oppressively, with the wrongful intention of injuring Plaintiff.

201.    Moreover, as a result of Defendant's unlawful conduct, as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of said suit as provided by 2000(e)(5)(g).

WHEREFORE, Plaintiff demands judgment against Defendant, a trial by jury on all issues so triable and any other relief this Court deems just and proper.

### COUNT IV – RETALIATORY HOSTILE WORK ENVIRONMENT
**Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000**
***Against City of Doral***

Plaintiff repeats and re-alleges the allegations set forth in paragraphs 6, 20-21, 23-24, 26, 31, 33-35, 61-85, 88, 101-105, 107-112, 114-118, and 126-141, as if fully set forth herein.

202.    Plaintiff opposed discriminatory conduct prohibited by Title VII when she complained to Defendant about the sex discrimination and hostile work environment that she was subjected to as described and set forth above.

203.    On multiple occasions, Plaintiff complained about Defendant's unlawful employment practices, and otherwise engaged in statutorily protected activity. Examples of such complaints and statutorily protected activity include, but are not limited to the following:

   i.   Filing a Sexually Hostile Work Environment Complaint with Defendant's Human Resources Department in July of 2018.

   ii.  Filing a Charge of Discrimination with the Equal Employment Opportunity Commission in August of 2018 alleging sex discrimination and retaliation.

   iii. Filing the instant lawsuit in November of 2020 alleging sex discrimination and retaliation.

204.    As a result of her protected activity, Plaintiff has been and continues to be subjected to a retaliatory and hostile, offensive, and abusive working environment, which has included repeated

40

acts of intimidation, harassment, ridicule, and other actions designed to alter the terms, conditions, and privileges of Plaintiff's employment.

205.   As set forth above, Defendant, through its employees including its supervisory personnel/members of the Department's Command Staff, intentionally committed acts that created and subjected Plaintiff to a retaliatory hostile work environment.

206.   In retaliation for Plaintiff's protected activities, Defendant has Plaintiff to a retaliatory hostile work environment that has included but has not been limited to frequently and continuously subjecting Plaintiff to the following:

a.  Excluding Plaintiff from opportunities to work overtime and earn additional compensation without any basis.

b.  Subjecting Plaintiff's work to heightened scrutiny.

c.  Subjecting Plaintiff to contrived infractions and unfounded reprimands.

d.  Targeted monitoring and tracking of Plaintiff and Plaintiff's vehicle in an effort to find grounds to discipline or terminate Plaintiff.

e.  Directives from the Command Staff to lower Plaintiff's performance evaluations without any basis.

f.  Preventing Plaintiff from taking assignments that would increase her responsibilities, opportunities for increased pay, and/or prestige, including but not limited to preventing Plaintiff was inexplicably from becoming a Homeless Liaison.

g.  Condoning and facilitating baseless investigations and discipline of Plaintiff.

h.  Escalated efforts to investigate, discipline, and reprimand Plaintiff.

i.  Sabotage of Plaintiff's work and efforts to conduct her job duties.

j.  Omitting Plaintiff from deserved commendations.

41

k. Atypical and baseless scrutinization of Plaintiff's everyday tasks.

l. Obstructing and denying Plaintiff's efforts to seek opportunities for additional training and professional certifications.

m. Refusing to address Plaintiff's complaints or take any corrective action to prevent and/or eradicate retaliatory and discriminatory acts against Plaintiff.

n. Subjecting Plaintiff to frequent and continuous harassment and allowing such harassment to continue without impediment.

o. Omitting Plaintiff from commendations awarded to other similarly situated officers for the same events and acts.

p. Withholding and removing positive information from Plaintiff's personnel file.

q. Other acts, as set forth herein, which have altered the terms, conditions, and privileges of Plaintiff's employment and reduced Plaintiff's pay, prestige, and responsibilities.

207.   The conduct directed at Plaintiff unreasonably has and continues to unreasonably interfere with Plaintiff's work performance and/or creates an intimidating, hostile, or offensive working environment.

208.   Plaintiff found and continues to find the harassment to be humiliating, offensive, unfair, and in violation of her rights under Title VII.

209.   Defendant knew or should have known of the hostile work environment, and failed to take prompt, effective, remedial action upon notice of a hostile work environment.

210.   Indeed, the hostile work environment has been worsened by the Department's subjecting Plaintiff to continued acts of retaliation, which have occurred because of Plaintiff's complaints about harassment and discrimination to which she continues to be subjected, and have worsened based on Plaintiff's continued acts of protected activity, including the filing of the instant lawsuit.

211.    The retaliatory acts and statements which defendant and its employees committed and allowed to be committed against Plaintiff were so severe and pervasive that Plaintiff believed (and any reasonable person would have believed) that they materially altered the terms and conditions of Plaintiff's employment, and they in fact did materially alter the terms and conditions of Plaintiff's employment.

212.    The non-discrete retaliatory hostile acts and statements to which Defendant subjected Plaintiff and to which it allowed Plaintiff to be subject while under its supervision and control happened with great frequency (sometimes more than once per day).

213.    The retaliatory hostile acts and statements to which Plaintiff was subjected and which Defendant allowed Plaintiff to be subjected by high-level employees under Defendant's supervision and control were always psychologically humiliating and unreasonably interfered with Plaintiff's work performance.

214.    Defendant had supervisory authority over the Command Staff of its Department, who in turn had supervisory authority over Plaintiff in the terms and conditions of her employment. Defendant allowed its employees to abuse or misuse their authority while under its supervision and control by retaliating against Plaintiff and subjecting Plaintiff to a hostile work environment in retaliation for her protected activities.

215.    The actions taken in retaliating against Plaintiff and creating and subjecting Plaintiff to a retaliatory hostile work environment were known to Defendant, or because these actions were so persistent, widespread, and repetitious, Defendant should have known of them.

216.    Defendant and the Chief of its Police Department could have acted to prevent the wrongdoing against Plaintiff, but instead decided to permit the wrongdoing to continue.

217.    Plaintiff's participation in protected activities was a primary motivating factor in the hostile work environment to which Plaintiff has been subjected.

218.    The actions were taken with reckless indifference to Plaintiff's federally protected rights.

219.    As a direct and proximate result of Defendant's unlawful retaliatory conduct, as set forth above, Plaintiff has suffered and continues to incur damages, including but not limited to medical expenses, loss of compensation, wages, benefits, opportunities for employment and advancement, loss of professional reputation and work experience, all to her detriment, in an amount to be shown according to proof.

220.    As a further direct and proximate result of Defendant's acts as alleged herein, Plaintiff has suffered and continues to suffer physical personal injuries, embarrassment, humiliation, mental anguish and other general damages, all to her detriment, in an amount to be shown according to proof.

221.    These injuries and losses are continuing and Plaintiffs will continue to suffer such injuries in the future.

222.    Defendant committed the acts alleged herein despicably, maliciously, fraudulently and/or oppressively, with the wrongful intention of injuring Plaintiff.

223.    Moreover, as a result of Defendant's unlawful conduct, as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of said suit as provided by 2000(e)(5)(g).

WHEREFORE, Plaintiff demands judgment against Defendant, a trial by jury on all issues so triable and any other relief this Court deems just and proper.

**COUNT V – INTENTIONAL SEX DISCRIMINATION**
**Under the Florida Civil Rights Act, Fla. Stat. § 760.01, *et seq.***
**Against City of Doral**

Plaintiff repeats and re-alleges the allegations set forth in paragraphs 6, 20-22, 24-26, 31-32, 35-61, 67-71, 73-103, 106, 109, 113, 114, 119-125, 126, 128, and 133-141, as if fully set forth herein.

224.   At all times mentioned in this complaint, all provisions of the Florida Civil Rights Act ("FCRA") were in full force and effect and were binding on Defendant, which is an Employer as defined by Florida Statute §760.02(7).

225.   At all times mentioned in this complaint, Plaintiff was an employee of Defendant and Defendant was an Employer as defined by Florida Statute §760.02 (7).

226.   Defendant has intentionally discriminated against Plaintiff in violation of the Florida Civil Rights Act by subjecting Plaintiff to disparate treatment from similarly situated employees outside of her protected class and denying Plaintiff equal terms and conditions of employment.

227.   Plaintiff was qualified for her position, having received countless positive performance evaluations, commendations, and has been employed by as an officer with Defendant's Police Department for twelve (12) years.

228.   Nevertheless, Plaintiff was subjected to discriminatory disparate treatment on the basis of her sex in violation of the FCRA.

229.   The acts of harassment and discrimination described herein occurred because of Plaintiff's membership in a protected class as a woman.

230.   On the basis of her sex, Plaintiff was treated differently than males who were similarly situated to Plaintiff in all material respects.

231.   Defendant, through the conduct of its agents, servants, and/or employees, discriminated against Plaintiff and subjected Plaintiff to adverse employment actions on the basis of her gender.

232.    Defendant has no legitimate non-discriminatory reason for its conduct and any such reason is pretext for discrimination.

233.    Defendant through the conduct of its agents, servants and/or employees, including members of its Command Staff, has discriminated against Plaintiff on the basis of her gender (female) and subjected Plaintiff to adverse employment action on the basis of her gender.

234.    Submission to the conduct acknowledged herein was made an implicit part of Plaintiff's employment with Defendant. Defendant's gender discrimination of Plaintiff included, but was not limited to, the following:

   a.   Subjecting Plaintiff to demotions in responsibilities, titles, and prestige without any basis, including removing Plaintiff from her longtime role of acting Sergeant and removing Plaintiff from her position as Public Information Officer and replacing her with a male.

   b.   Scrutinizing Plaintiff's work more closely than that of other similarly situated male employees, without justification.

   c.   Subjecting Plaintiff to false allegations, unwarranted discipline, intentional damage to her professional reputation.

   d.   Excluding Plaintiff from job assignments and opportunities that were provided to similarly situated male officers, including excluding Plaintiff from opportunities to work overtime and earn additional pay and preventing Plaintiff from being appointed to a Homeless Liaison Officer without any justification.

   e.   Subjecting Plaintiff to disparate application of work rules and policies, including reprimands and discipline for trivial or contrived acts that similarly situated male officers were not reprimanded or disciplined for.

f.   Subjecting Plaintiff to unfounded investigations and investigative tactics designed to harass, humiliate, and harm Plaintiff professionally.

g.   Intentional diminishment of Plaintiff's work evaluations without justification.

h.   Subjecting Plaintiff to derogatory comments and insults, including labeling Plaintiff as a coward.

i.   Subjecting Plaintiff to regular comments and heightened scrutiny regarding her appearance and uniform.

j.   Subjecting Plaintiff to frequent and continuous harassment and allowing such harassment to continue without impediment.

k.   Failing to investigate or take any corrective action in response to Plaintiff's complaints of discrimination.

l.   Omitting Plaintiff from commendations that were awarded to similarly situated male officers for the same events and actions.

m.   Withholding and removing positive information from Plaintiff's personnel file.

n.   Other acts, as set forth herein, which altered the terms, conditions, and privileges of Plaintiff's employment.

235.   Similarly situated male employees, such as such as Officer Chris Fabregas, Sgt. Tellez, Sgt. Fernandez, Officer Romo, Officer Desuis, and Detective Delgado were treated more favorably than Plaintiff, as set forth herein. The foregoing male individuals are or have been similar to Plaintiff in all material respects, including rank, experience level, and assigned duties.

236.   Defendant knew or should have known of the acts of sex discrimination described hereinabove and failed to take prompt corrective action to remedy the harassment, and at all times relevant to this action, the employees, agents, and elected officials of Doral were in the control of

the Department, and the Department officers and employees referred to hereinabove were employees and/or agents of Doral and were acting in the course and the scope of their authority.

237.    As a direct and proximate result of Defendant's unlawful discriminatory conduct, as set forth above, Plaintiff has suffered and continues to incur damages, including but not limited to medical expenses, loss of compensation, wages, benefits, opportunities for employment and advancement, loss of professional reputation and work experience, all to her detriment, in an amount to be shown according to proof.

238.    As a further direct and proximate result of Defendant's acts as alleged herein, Plaintiff has suffered and continues to suffer physical personal injuries, embarrassment, humiliation, mental anguish and other general damages, all to her detriment, in an amount to be shown according to proof.

239.    These injuries and losses are continuing and Plaintiffs will continue to suffer such injuries in the future.

240.    As a result of Defendant's unlawful conduct, as alleged herein, Plaintiff is entitled to recover reasonable attorneys' fees and costs of said suit as provided by Florida Statute §760.11 (5), in an amount to be shown according to proof.

241.    Plaintiff, pursuant to Florida Statute §760.11 (5), is also entitled to recover punitive damages from Defendant in the amount of one hundred thousand dollars ($100,000.00) without first seeking leave of court.

242.    Plaintiff demands judgment against Defendant, a trial by jury on all issues so triable and any other relief this Court deems just and proper.

### COUNT VI – SEX-BASED HOSTILE WORK ENVIRONMENT
**Under the Florida Civil Rights Act, Fla. Stat. § 760.01, *et seq.***
***Against City of Doral***

Plaintiff repeats and re-alleges the allegations set forth in paragraphs 6, 20-22, 24-26, 31-32, 35-61, 67-71, 73-103, 106, 109, 113, 114, 119-125, 126, 128, and 133-141, as if fully set forth herein.

243.    At all times mentioned in this complaint, all provisions of the Florida Civil Rights Act ("FCRA") were in full force and effect and were binding on Defendant, which is an Employer as defined by Florida Statute §760.02(7).

244.    At all times mentioned in this Complaint, Plaintiff was an employee of Defendant and Defendant was an Employer as defined by Florida Statute §760.02 (7).

245.    By the above alleged acts, Defendant has violated the FCRA's guarantee of the right to work in an environment free from intimidation, ridicule, and insult.

246.    During Plaintiff's employment and continuing to the present day, the Department has maintained a hostile working environment contaminated by a pattern of offensive conduct, including harassment and discrimination directed at women, and in particular, Plaintiff. Such conduct has been severe, pervasive, and ongoing since at least early 2018.

247.    Defendant, through the conduct of its agents, servants, and/or employees, has subjected Plaintiff to unwelcome harassment and a hostile and abusive work environment based on her membership in a protected class as a woman.

248.    At all times material hereto, Plaintiff has been qualified for her job as evidenced by her continuous employment by the Department as a law enforcement officer for over twelve (12) years.

249.    Nevertheless, Plaintiff has been subjected to multiple non-discrete adverse employment actions, including continuous discrimination and harassment condoned and engaged in by employees of the Department and the Department's Command Staff.

250.    Plaintiff was and remains subjectively offended by the abusive, intimidating, hostile, and gender-offensive work environment in which she worked and continues to work and a reasonable person would find Plaintiff's work environment abusive, intimidating, hostile, and offensive based on the frequency of the discriminatory conduct, its severity, and because it unreasonably interfered with Plaintiff's work performance.

251.    Defendant's harassment of Plaintiff violated the FCRA by subjecting Plaintiff to a hostile work environment which had the purpose or effect of altering the terms and conditions of Plaintiff's employment.

252.    Defendant is vicariously liable for all tangible job detriments suffered by Plaintiff and all gender harassment engaged in by the supervisory personnel of Defendant's Police Department, who were empowered by Defendant to take tangible employment actions against Plaintiff.

253.    Defendant is also indirectly liable for all gender harassment against Plaintiff because it knew or should have known of the gender harassment and failed to take prompt remedial action which was reasonably calculated to end the harassment.

254.    Defendant is also directly liable, as at all times material hereto, Defendant's agents were acting within the course and scope of their employment with Defendant. Plaintiff was harassed based on her gender and by her supervisors and her coworkers who were acting at the direction of Plaintiff's supervisors.

255.    Defendant's actions creating and maintaining a hostile work environment included, but were not limited to, the following:

     a.  Subjecting Plaintiff to demotions in responsibilities, titles, and prestige without any basis, including removing Plaintiff from her longtime role of acting Sergeant and

removing Plaintiff from her position as Public Information Officer and replacing her with a male.

b. Scrutinizing Plaintiff's work more closely than that of other similarly situated male employees, without justification.

c. Subjecting Plaintiff to false allegations, unwarranted discipline, intentional damage to her professional reputation.

d. Excluding Plaintiff from job assignments and opportunities that were provided to similarly situated male officers, including excluding Plaintiff from opportunities to work overtime and earn additional pay and preventing Plaintiff from being appointed to a Homeless Liaison Officer without any justification.

e. Subjecting Plaintiff to disparate application of work rules and policies, including reprimands and discipline for trivial or contrived acts that similarly situated male officers were not reprimanded or disciplined for.

f. Subjecting Plaintiff to unfounded investigations and investigative tactics designed to harass, humiliate, and harm Plaintiff professionally.

g. Intentional diminishment of Plaintiff's work evaluations without justification.

h. Subjecting Plaintiff to derogatory comments and insults, including labeling Plaintiff as a coward.

i. Subjecting Plaintiff to regular comments and heightened scrutiny regarding her appearance and uniform.

j. Subjecting Plaintiff to frequent and continuous harassment and allowing such harassment to continue without impediment.

k.   Failing to investigate or take any corrective action in response to Plaintiff's complaints of discrimination.

l.   Omitting Plaintiff from commendations that were awarded to similarly situated male officers for the same events and actions.

m.   Withholding and removing positive information from Plaintiff's personnel file.

n.   Other acts, as set forth herein, which altered the terms, conditions, and privileges of Plaintiff's employment.

256.   Similarly situated male employees, such as such as Officer Chris Fabregas, Sgt. Tellez, Sgt. Fernandez, Officer Romo, Officer Desuis, and Detective Delgado were treated more favorably than Plaintiff, as set forth in previous examples. The foregoing male individuals are or have been similar to Plaintiff in all relevant respects, including rank, experience level, and assigned duties.

257.   The acts of sex discrimination described hereinabove constituted adverse employment actions and were sufficiently severe and pervasive so as to create an intolerable hostile working environment, affecting the terms and conditions of the Plaintiff's employment.

258.   The Department's Command Staff, including but not limited to Chief Organvidez, Major Seiglie, Sgt. Fernandez, and Sgt. Mercado, were aware and have condoned and participated in creating the hostile work environment described hereinabove and failed to take corrective action to remedy the acts and conduct.

259.   Defendant knew or should have known of the acts of sex discrimination, harassment, and retaliation that formed this hostile work environment described hereinabove and failed to take prompt corrective action to remedy the harassment, and at all times relevant to this action, the employees, agents, and elected officials of Defendant were in the control of the Department, and

the Department officers and employees referred to hereinabove were employees and/or agents of Defendant and were acting in the course and the scope of their authority.

260.    Defendant took no steps to stop the harassment of Plaintiff.

261.    The harassment was severe or pervasive enough to change the conditions of Plaintiff's employment and create an abusive environment, judged by both an objective standard and a subjective standard.

262.    Plaintiff took advantage of all preventative or corrective opportunities as provided by the Defendant and did everything possible to avoid the harm.

263.    Plaintiff has been damaged because of said hostile work environment.

264.    Defendant committed the acts alleged herein despicably, maliciously, fraudulently and/or oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice and in willful and conscious disregard of Plaintiff's rights.

265.    As a direct and proximate result of Defendant's unlawful discriminatory conduct, as set forth above, Plaintiff has suffered and continues to suffer losses incurred in earnings, earning capacity, and other employment benefits, all to her detriment, in an amount to be shown according to proof.

266.    As a further direct and proximate result of Defendant's acts as alleged herein, Plaintiff has suffered and continues to suffer physical personal injuries, embarrassment, humiliation, mental anguish and other general damages, all to her detriment, in an amount to be shown according to proof.

267.    These injuries and losses are continuing and Plaintiffs will continue to suffer such injuries in the future.

268.     As a result of Defendant's unlawful conduct, as alleged herein, Plaintiff is entitled to recover reasonable attorneys' fees and costs of said suit as provided by Florida Statute §760.11 (5), in an amount to be shown according to proof.

269.     Plaintiff, pursuant to Florida Statute §760.11 (5), is also entitled to recover punitive damages from Defendant in the amount of one hundred thousand dollars ($100,000.00) without first seeking leave of court.

270.     Plaintiff demands judgment against Defendant, a trial by jury on all issues so triable and any other relief this Court deems just and proper.

## COUNT VII – RETALIATION
### Under the Florida Civil Rights Act, Fla. Stat. § 760.01, *et seq.*
### *Against City of Doral*

Plaintiff repeats and re-alleges the allegations set forth in paragraphs 6, 20-21, 23-24, 26, 31, 33-35, 61-85, 88, 101-105, 107-112, 114-118, and 126-141, as if fully set forth herein.

271.     At all times mentioned in this complaint, all provisions of the Florida Civil Rights Act ("FCRA") were in full force and effect and were binding on Defendant, which is an Employer as defined by Florida Statute §760.02(7).

272.     At all times mentioned in this complaint, Plaintiff was an employee of Defendant and Defendant was an Employer as defined by Florida Statute §760.02 (7).

273.     Defendant's supervisory personnel and other agents have engaged in retaliatory harassment and retaliation described herein while acting in the course, scope, and furtherance of their agency and employment relationship with Defendant.

274.     At all times mentioned in this Complaint, all provisions of the FCRA were in full force and effect and were binding on Defendant.

275.    During her employment with Defendant, Plaintiff issued numerous lawful complaints to her superiors and otherwise engaged in statutorily protected activity. These complaints included, but were not limited to, the following:

    a.  Filing a Sexually Hostile Work Environment Complaint with Defendant's Human Resources Department in July of 2018.

    b.  Filing a Charge of Discrimination with the Equal Employment Opportunity Commission in August of 2018 alleging sex discrimination and retaliation.

    c.  Filing the instant lawsuit in November of 2020 alleging sex discrimination and retaliation.

276.    As a result of Plaintiff's complaints as described above, Defendant, through its agents, servants and/or employees retaliated against Plaintiff for participating in actions protected under the FCRA.

277.    By retaliating against Plaintiff for complaining about gender harassment and gender discrimination, Defendant violated Florida Statute §760.10 (7).

278.    The retaliatory conduct taken against Plaintiff by Defendant, included, but was not limited to, the following:

    a.  Excluding Plaintiff from opportunities to work overtime and earn additional compensation without any basis.

    b.  Subjecting Plaintiff's work to heightened scrutiny.

    c.  Subjecting Plaintiff to contrived infractions and unfounded reprimands.

    d.  Targeted monitoring and tracking of Plaintiff and Plaintiff's vehicle in an effort to find grounds to discipline or terminate Plaintiff.

e.  Directives from the Command Staff to lower Plaintiff's performance evaluations without any basis.

f.  Preventing Plaintiff from taking assignments that would increase her responsibilities, opportunities for increased pay, and/or prestige, including but not limited to preventing Plaintiff was inexplicably from becoming a Homeless Liaison.

g.  Condoning and facilitating baseless investigations and discipline of Plaintiff.

h.  Escalated efforts to investigate, discipline, and reprimand Plaintiff.

i.  Sabotage of Plaintiff's work and efforts to conduct her job duties.

j.  Omitting Plaintiff from deserved commendations.

k.  Atypical and baseless scrutinization of Plaintiff's everyday tasks.

l.  Obstructing and denying Plaintiff's efforts to seek opportunities for additional training and professional certifications.

m.  Refusing to address Plaintiff's complaints or take any corrective action to prevent and/or eradicate retaliatory and discriminatory acts against Plaintiff.

n.  Subjecting Plaintiff to frequent and continuous harassment and allowing such harassment to continue without impediment.

o.  Omitting Plaintiff from commendations awarded to other similarly situated officers for the same events and acts.

p.  Withholding and removing positive information from Plaintiff's personnel file.

q.  Other acts, as set forth herein, which have altered the terms, conditions, and privileges of Plaintiff's employment and reduced Plaintiff's pay, prestige, and responsibilities.

279.  As a direct and proximate result of Defendant's unlawful retaliatory conduct, as set forth above, Plaintiff has suffered and continues to suffer substantial losses incurred in earnings,

deferred compensation, earning capacity, back pay, front pay, and other employment benefits, all to her detriment, in an amount to be shown according to proof.

280.     As a further direct and proximate result of Defendant's unlawful retaliatory conduct, as set forth above, Plaintiff has suffered and continues to suffer personal injuries, embarrassment, humiliation, mental anguish and other general damages, all to her detriment, in an amount to be shown according to proof.

281.     Moreover, as a result Defendant's unlawful conduct, as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of said suit as provided by Florida Statute §760.11 (5).

282.     Plaintiff, pursuant to Florida Statute §760.11 (5), is also entitled to recover punitive damages from Defendant in the amount of one hundred thousand dollars ($100,000.00) without first seeking leave of court.

283.     As a result of Defendant's actions, Plaintiff has suffered and continues to suffer humiliation and embarrassment, as well as physical, mental and emotional distress.

284.     As a result of the retaliation, Plaintiff has incurred and continues to incur damages, including but not limited to medical expenses, loss of compensation, wages, benefits, opportunities for employment and advancement, loss of professional reputation, and work experience.

WHEREFORE, Plaintiff demands judgment against Defendant, a trial by jury on all issues so triable, and any other relief the Court deems just and proper.

### COUNT VIII – RETALIATORY HOSTILE WORK ENVIRONMENT
**Under the Florida Civil Rights Act, Fla. Stat. § 760.01, *et seq.***
***Against City of Doral***

285.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 6, 20-21, 23-24, 26, 31, 33-35, 61-85, 88, 101-105, 107-112, 114-118, and 126-141, as if fully set forth herein.

286.    At all times mentioned in this Complaint, all provisions of the Florida Civil Rights Act ("FCRA") were in full force and effect and were binding on Defendant, which is an Employer as defined by Florida Statute §760.02(7).

287.    At all times mentioned in this Complaint, Plaintiff was an employee of Defendant and Defendant was an Employer as defined by Florida Statute §760.02 (7).

288.    Plaintiff opposed discriminatory conduct by Defendant which is prohibited by the FCRA when she complained to Defendant about the sex discrimination and hostile work environment that she was subjected to as described and set forth above.

289.    Defendant's supervisory personnel and other agents have engaged in retaliatory harassment and retaliation described herein while acting in the course, scope, and furtherance of their agency and employment relationship with Defendant.

290.    The retaliatory conduct and other forms of retaliation described herein was severe and pervasive enough to both alter Plaintiff's employment conditions and create an oppressive, hostile, intimidating, and abusive working environment in violation of the Florida Civil Rights Act (Fla. Stat. § 760.01, et seq.).

291.    The retaliatory hostile work environment described herein was open and notorious, condoned and engaged in by members of the Department's Command Staff, such that the Defendant knew or should have known about the retaliatory conduct towards Plaintiff.

292.    On multiple occasions, Plaintiff complained about Defendant's unlawful employment practices, and otherwise engaged in statutorily protected activity. Examples of such complaints and statutorily protected activity include, but are not limited to the following:

   i. Filing a Sexually Hostile Work Environment Complaint with Defendant's Human Resources Department in July of 2018.

ii.  Filing a Charge of Discrimination with the Equal Employment Opportunity Commission in August of 2018 alleging sex discrimination and retaliation.

iii.  Filing the instant lawsuit in November of 2020 alleging sex discrimination and retaliation.

293.  As a result of her protected activity, Plaintiff has been and continues to be subjected to a retaliatory and hostile, offensive, and abusive working environment, which has included repeated acts of intimidation, harassment, ridicule, and other actions designed to alter the terms, conditions, and privileges of Plaintiff's employment.

294.  As set forth above, Defendant, through its employees including its supervisory personnel/members of the Department's Command Staff, intentionally committed acts that created and subjected Plaintiff to a retaliatory hostile work environment.

295.  In retaliation for Plaintiff's protected activities, Defendant has Plaintiff to a retaliatory hostile work environment that has included but has not been limited to frequently and continuously subjecting Plaintiff to the following:

a.  Excluding Plaintiff from opportunities to work overtime and earn additional compensation without any basis.

b.  Subjecting Plaintiff's work to heightened scrutiny.

c.  Subjecting Plaintiff to contrived infractions and unfounded reprimands.

d.  Targeted monitoring and tracking of Plaintiff and Plaintiff's vehicle in an effort to find grounds to discipline or terminate Plaintiff.

e.  Directives from the Command Staff to lower Plaintiff's performance evaluations without any basis.

f.   Preventing Plaintiff from taking assignments that would increase her responsibilities, opportunities for increased pay, and/or prestige, including but not limited to preventing Plaintiff was inexplicably from becoming a Homeless Liaison.

g.   Condoning and facilitating baseless investigations and discipline of Plaintiff.

h.   Escalated efforts to investigate, discipline, and reprimand Plaintiff.

i.   Sabotage of Plaintiff's work and efforts to conduct her job duties.

j.   Omitting Plaintiff from deserved commendations.

k.   Atypical and baseless scrutinization of Plaintiff's everyday tasks.

l.   Obstructing and denying Plaintiff's efforts to seek opportunities for additional training and professional certifications.

m.   Refusing to address Plaintiff's complaints or take any corrective action to prevent and/or eradicate retaliatory and discriminatory acts against Plaintiff.

n.   Subjecting Plaintiff to frequent and continuous harassment and allowing such harassment to continue without impediment.

o.   Omitting Plaintiff from commendations awarded to other similarly situated officers for the same events and acts.

p.   Withholding and removing positive information from Plaintiff's personnel file.

q.   Other acts, as set forth herein, which have altered the terms, conditions, and privileges of Plaintiff's employment and reduced Plaintiff's pay, prestige, and responsibilities.

296.   The conduct directed at Plaintiff unreasonably has and continues to unreasonably interfere with Plaintiff's work performance and/or creates an intimidating, hostile, or offensive working environment.

297.   Plaintiff found and continues to find the harassment to be humiliating, offensive, unfair, and in violation of her rights under the FCRA.

298.   Defendant knew or should have known of the hostile work environment, and failed to take prompt, effective, remedial action upon notice of a hostile work environment.

299.   Indeed, the hostile work environment has been worsened by the Department's subjecting Plaintiff to continued acts of retaliation, which have occurred because of Plaintiff's complaints about harassment and discrimination to which she continues to be subjected, and have worsened based on Plaintiff's continued acts of protected activity, including the filing of the instant lawsuit.

300.   The retaliatory acts and statements which defendant and its employees committed and allowed to be committed against Plaintiff were so severe and pervasive that Plaintiff believed (and any reasonable person would have believed) that they materially altered the terms and conditions of Plaintiff's employment, and they in fact did materially alter the terms and conditions of Plaintiff's employment.

301.   The non-discrete retaliatory hostile acts and statements to which Defendant subjected Plaintiff and to which it allowed Plaintiff to be subject while under its supervision and control happened with great frequency (sometimes more than once per day).

302.   The retaliatory hostile acts and statements to which Plaintiff was subjected and which Defendant allowed Plaintiff to be subjected by high-level employees under Defendant's supervision and control were always psychologically humiliating and unreasonably interfered with Plaintiff's work performance.

303.   Defendant had supervisory authority over the Command Staff of its Department, who in turn had supervisory authority over Plaintiff in the terms and conditions of her employment. Defendant allowed its employees to abuse or misuse their authority while under its supervision

and control by retaliating against Plaintiff and subjecting Plaintiff to a hostile work environment in retaliation for her protected activities.

304.    The actions taken in retaliating against Plaintiff and creating and subjecting Plaintiff to a retaliatory hostile work environment were known to Defendant, or because these actions were so persistent, widespread, and repetitious, Defendant should have known of them.

305.    Defendant and the Chief of its Police Department could have acted to prevent the wrongdoing against Plaintiff, but instead decided to permit the wrongdoing to continue.

306.    Plaintiff's participation in protected activities was a primary motivating factor in the hostile work environment to which Plaintiff has been subjected.

307.    As a direct and proximate result of Defendant's unlawful retaliatory conduct, as set forth above, Plaintiff has suffered and continues to suffer substantial losses incurred in earnings, deferred compensation, earning capacity, back pay, front pay, and other employment benefits, all to her detriment, in an amount to be shown according to proof.

308.    As a further direct and proximate result of Defendant's unlawful retaliatory conduct, as set forth above, Plaintiff has suffered and continues to suffer personal injuries, embarrassment, humiliation, mental anguish and other general damages, all to her detriment, in an amount to be shown according to proof.

309.    Moreover, as a result Defendant's unlawful conduct, as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of said suit as provided by Florida Statute §760.11 (5).

310.    Plaintiff, pursuant to Florida Statute §760.11 (5), is also entitled to recover punitive damages from Defendant in the amount of one hundred thousand dollars ($100,000.00) without first seeking leave of court.

311.    As a result of Defendant's actions, Plaintiff has suffered and continues to suffer humiliation and embarrassment, as well as physical, mental and emotional distress.

312.    As a result of the retaliation, Plaintiff has incurred and continues to incur damages, including but not limited to medical expenses, loss of compensation, wages, benefits, opportunities for employment and advancement, loss of professional reputation, and work experience.

WHEREFORE, Plaintiff demands judgment against Defendant, a trial by jury on all issues so triable, and any other relief the Court deems just and proper.

### Prayer for Relief

WHEREFORE, Plaintiff respectfully invokes the remedial powers of this Court as provided under Title VII and the FCRA, and prays for a judgment against Defendant, the CITY OF DORAL:

A.  Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination and retaliation against Plaintiff;

B.  Injunctive relief requiring Defendant to restore Plaintiff's personnel record to accurately reflect her work, including clearing Plaintiff's record of any unfounded discipline and including all commendations, undiminished evaluations, and other items which have been improperly withheld or removed;

C.  Awarding Plaintiff any and all economic damages available to her including, but not limited to her back pay, front pay, prejudgment interest, and damages for all employment benefits and lost income that Plaintiff would have received but for the discriminatory acts and practices of Defendant;

D.  Awarding Plaintiff any and all compensatory damages available to her including but not limited to damages to compensate Plaintiff for the emotional injuries, pain and suffering and other losses and injuries suffered as a result of Defendant's wrongful actions;

E.  Declaring Defendant's conduct to be in violation of Title VII and the FCRA and ordering Defendant to institute policies, practices, and programs which provide equal employment opportunities for individuals and which eradicate the effects of its past and present unlawful practices;

F.  Awarding Plaintiff punitive damages against Defendant as a consequence of the willful, malicious, and intentional conduct;

G.  Awarding reasonable attorneys' fees and costs incurred in this action.

### DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of all issues so triable.

Dated this <u>14th</u> day of May, 2021.

Respectfully submitted,

<u>s/Robert L. Switkes</u>
Robert L. Switkes, Esq.
Florida Bar No.: 241059
rswitkes@switkeslaw.com
**SWITKES & ZAPPALA, P.A.**
407 Lincoln Road, Penthouse SE
Miami Beach, Florida 33139
Telephone: (305) 534-4757
*Attorneys for Plaintiff, Officer Maylee Bardelas*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this <u>15th</u> day of January 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Noticed of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

<u>s/Robert L. Switkes</u>
Robert L. Switkes, Esq.

## SERVICE LIST
### *Maylee Bardelas v. City of Doral*
### United States District Court, Southern District of Florida
### Case No.: 1:20-cv-24894-KMM

**Margaret H. Meyers, Esq.**
Lydecker Diaz
1221 Brickell Avenue, 19th Floor
Miami, Florida 33131
Phone: 305-416-3180
Fax: 305-416-3190
Email: mhm@lydeckerdiaz.com
*Attorney for Defendant*